GRADY, Appellant, v. O'REILLY, *et al.*

### Division One, June 5, 1893.

1. **Mortgage**: FUTURE ADVANCES: JUNIOR MORTGAGEE. A mortgage cannot be made available to secure future advances by any subsequent parol agreement so as to give preference over the lien of a junior mortgagee.

2. **Subrogation**: PAYMENT OF A DEBT BY THIRD PERSON. The debt of a creditor which is paid with the money of a third person without any agreement that the security therefor shall be assigned or kept alive for the benefit of such third person is absolutely extinguished.

3. ———: ———. The doctrine of subrogation will, however, be applied when the person claiming its benefit has been compelled to pay the debt of a third person in order to protect his own right or to save his own property.

4. **Agency**: PROFITS BY AGENT. An agent is required to act honestly and will not be permitted to make a profit out of a transaction conducted in behalf of his principal.

5. ———. The mere fact of one procuring a loan of money for another does not create the relation of principal and agent.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Edmond A. B. Garesche* for appellant.

(1) The trial court erred in subrogating respondent O'Reilly to the rights of his co-respondents Francis Fisher and John C. Hacker as to the interest which he claims to have paid them on their respective deeds of trust, Exhibits A, B, C and E. The evidence shows he was a mere volunteer. Sheldon on Subrogation, sec. 1, page 2; *Norton v. Highleyman*, 88 Mo. 624; *Bunn v. Lindsay*, 95 Mo. 250; *Price v. Courtney*, 87 Mo.

387. (2) As against a junior incumbrancer no new terms could be incorporated into the prior mortgage, nor could any new indebtedness be secured by it. Sheldon on Subrogation, page 19. (3) The evidence shows that O'Reilly was a broker acting for the Morans; in regard to the loan on the property, the appellant, as the owner of the junior incumbrance, has a right to be subrogated to the rights of the Morans with respect to all payments which were made by them to O'Reilly; and has also a right to insist that the amounts paid by the said Morans to O'Reilly in excess of the amount which he paid out for them to carry these loans, should be accounted for and credited upon the deed of trust which is now held by him. *Mason v. Bauman*, 62 Ill. 76; *DeBussche v. Alt.* L. R., 8 Ch. Div. 286; Story on Agency [9 Ed.], sec. 207; Sheldon on Subrogation, sec. 17, page 19; *Bank v. Roberts*, 70 Me. 384; Jones on Mortgages, sec. 1118; *Harrison v. Wyse*, 24 Conn. 1. (4) The court erred in refusing to permit appellant to offer and read in evidence the receipts and notes received by the owners of the equity of redemption from respondent M. B. O'Reilly.

*W. F. Smith* and *D. D. Fassett* for respondent.

The respondent, O'Reilly, is entitled to be subrogated to the rights of the respondent, Fisher, to the extent of the interest paid by O'Reilly to Fisher on the deeds of trust A, B and C. "And the right of subrogation remains unaffected by a renewal of the mortgage." 15 American and English Encyclopedia of Law, 867–869; 12 American and English Encyclopedia of Law, 866; *Reyburn v. Mitchell*, 106 Mo. 380. A stranger may become entitled to subrogation on payment, by consent of creditor. *Fivel v. Zuber*, 66 Tex. 275. Or on agreement with debtor, or without agree-

ment, on general principles. *Crippen v. Chapel*, 35 Kan. 495; *Gans v. Thiene*, 93 N. Y. 225. Whenever he should be subrogated he will be. *Yaple v. Stephens*, 36 Kan. 680. If O'Reilly under an honest supposition or expectation that he was protected generally by exhibit "F" which for some reason became inoperative, or failed, he would be subrogated. *Jones v. Mack*, 53 Mo. 147; *Honaker v. Shough*, 55 Mo. 472; *Burden v. Johnson*, 81 Mo. 318; *Flanikin v. Neal*,¹ 67 Tex. 629. (2) The respondent, O'Reilly, is entitled to subrogation to the extent of the interest advanced by him to the respondent Hacker, in payment of the interest on the deed of trust, "Exhibit E." *Reyburn v. Mitchell*, 106 Mo. 380; *Jones v. Mack*, 53 Mo. 147; *Honaker v. Shough*, 55 Mo. 472; *Burden v. Johnson*, 81 Mo. 318; A stranger entitled to subrogation on agreement with creditor. *Fivel v. Zuber*, 67 Tex. 275. Or on agreement with debtor, or may exist by contract, or without it, on general principles of equity. *Crippen v. Chapel*, 35 Kan. 495; *Yaple v. Stephens*, 36 Kan. 680. May be invoked to do justice generally. *Gans v. Thiene*, 93 N. Y. 225; 12 American and English Encyclopedia of Law, 866. (3) The respondent, O'Reilly, was and is lawfully entitled to the difference between the rate of interest collected from the Morans and that paid to Fisher upon "A, B and C," as well as that paid to Hacker on "E." O'Reilly's position was not that of Moran's agent, but: Even where an agency exists, where each of the principals has knowledge that the agent acts in a dual capacity, the disability will be removed. American and English Encyclopedia of Law, 381; *Alexander v. University*, 57 Ind. 466; *Robinson v. Jarvis*, 25 Mo. App. 421. (4) The court did not err in sustaining respondent's objection to the admission of the various documents offered in evidence, for the following reasons, to-wit:

*First.* Because they were incompetent, immaterial and irrelevant.

*Second.* Because there was no controversy about the matters to which they related, and would have been cumulative testimony on an uncontroverted issue or issues.

MACFARLANE, J.—This suit is against O'Reilly, Francis Fisher, John C. Hacken, Will J. Howard, Charles Moran and Mary Moran, his wife; and its purpose is to have an accounting and redeem lots three and four, block one of Goff's addition to the city of St. Louis, from certain deeds of trust made to secure notes held by defendants, as is charged.

It is charged in the petition and shown by the evidence, that on the twentieth day of February, 1871, Robert Wright, being the owner of the property, conveyed the same to Andrew S. Barada, as trustee, to secure a note of $2,000, payable to Margaret Barada; on the ninth day of April, he conveyed the same property to the same trustee to secure to the said Margaret another note for $1,000; and on the twenty-fourth day of April, 1875, he again conveyed the lots to one A. C. Taylor as trustee, to secure a note of $500. These notes bore interest at ten per cent. per annum. The notes and deeds of trust are in the pleadings and evidence designated respectively as exhibits A, B, and C.

On the twenty-eighth day of August, 1875, the said Wright by deed of warranty conveyed the lots to defendants Moran and wife. Moran assuming as part of the purchase price the notes secured by deeds A, B, and C. On this purchase by Moran and wife they gave back a deed of trust on the property to Wright to secure $1,000 purchase price which is called exhibit E. On the fifth of October, 1876, Moran and wife conveyed the same property to secure some notes due

the Citizen's bank. On the third day of March, 1877, Moran and wife conveyed the same property to a trustee to secure a note of $3,500 payable to Will J. Howard five years after date with interest at ten per cent. and ten semi-annual interest notes of $140 each. This deed was designated as exhibit F, and its validity is in question.

On the second day of February 1880, the said Moran and wife conveyed the property to a trustee with power of sale, to secure to plaintiff a certain note therein described, and on the twenty-first day of February, 1888, the trustee sold and by deed conveyed the property to plaintiff. Holding the equity of redemption under this conveyance, plaintiff asked that an account be taken of the amount due on the prior deeds of trust and for leave to redeem. It was charged that the notes secured by Exhibits A, B, and C were held by defendant Fisher, and that secured by exhibit E by defendant Hacken. It was also charged that the note for $3,500 was given to defendant O'Reilly (though made in the name of Howard) in consideration that he would pay the notes secured by Exhibits A, B and C, and also that said defendant had collected from Moran and wife sums which had not been accounted for. A separate answer and cross bill were filed by defendant O'Reilly, in which he admitted the execution and delivery of all the conveyances mentioned in the petition. Admitted that the note for $3,500 (F) was assigned by Howard to him but he denied that he undertook and agreed to pay said first three notes (A, B and C) as charged.

In respect to the $3,500 note (F) said defendant charged that on the third day of March he was engaged in the business of financial agent in the city of St. Louis, and at the time the holders of notes (A, B and C) amounting to $3,500 were pressing Moran and wife

for payment and they applied to him for a loan of that amount with which to pay these notes and undertook to give him as security a first lien on said lots, representing that there were no other liens on them. That he undertook to furnish them the money on this condition, and thereupon took the note and deed of trust and had the latter recorded. That upon investigation he found the other deeds of trust (E and the one to the bank) and declined to furnish the money on the deed of trust subject to those. That it was thereupon agreed that said defendant would furnish the money, but instead of paying the notes, A, B and C, he would take an assignment of them, and extend the time of their payment for five years, and reduce the interest to eight per cent. That this was done and defendant thereupon re-assigned the notes to defendant Fisher from whom he got the money. That it was also agreed that defendant should retain and hold the $3,500 note and deed of trust (F) as additional security.

He stated further that at the request of said Moran and wife, he did on the twenty-seventh of November, 1887, purchase from Wright the note for $1,000 (Ex. E.) and assigned the same to defendant Hacken, who afterwards re-assigned the same to him and that he was hen the owner thereof and said defendant Hacken had no interest therein or in this suit. That in consideration that defendant would secure an extension of time on this note "E," said defendant Moran agreed to pay interest thereon at nine per cent. semi-annually, and on the twenty-eighth of February, 1882, in consideration of procuring a further extension they agreed to pay ten per cent. interest. That the interest was so paid by said Moran until February, 1884, after which and up to June 1888, at the request of said Moran he had advanced and paid the interest on said note. He

charged that on the expiration of the extension for five years of the notes (A, B and C) further extensions were made of two and then of one years. He charged further that after 1886, at the request of said defendant Moran, he advanced semi-annually the interest due Fisher on notes A, B and C, at six per cent. until October 10, 1888, making $420; and at like request he advanced to defendant Hacken from 1885 to 1888 interest on the $1,000 note "E" a total of $240; and said sums, amounting to $660 had not been refunded. He also charged that he had paid another debt of Moran at his request amounting to $400. That at the time all said payments were made it was understood and agreed that the deed of trust (F) and notes secured thereby, should stand pledged and be held as security for said advances. He also asked to be subrogated to the rights of Fisher and Hacken for the amounts of the interest so advanced.

It was shown on the trial that when the notes A, B and C were assigned by O'Reilly to Fisher, there was an agreement between them that the latter should receive six per cent. interest on them and that the former collected the full rate and after paying Fisher six per cent. retained the balance.

Defendant O'Reilly testified substantially to the facts charged in his cross bill. The Morans testified that the agreement was that the defendant O'Reilly should pay off the prior notes (A, B and C), and not that he should take an assignment of them, and that they supposed it had been done and denied that said defendant paid interest at their request.

The court found that deeds of trust A, B, C and E were valid and subsisting liens for the principal and unpaid interest on the notes secured thereby. That deed of trust F or the notes secured thereby never became effective and were invalid. That defendant

O'Reilly was not the agent of the Morans and had the the right to contract with Fisher, on assigning notes A, B and C to him, by which he should receive all interest paid on the notes in excess of six per cent., and he could not be required to account for the amount so received. The decree canceled the $3,500 deed of trust "F," subrogated defendant O'Reilly to the rights of the respective mortgagees for interest paid them for the Morans, and allowed plaintiff to redeem and have all these deeds of trust, A, B, C and E, satisfied upon payment of the amounts due thereon and the interest so advanced and paid by O'Reilly, and refused to charge O'Reilly with the difference in interest collected from Moran and that paid to Fisher on notes A, B and C. From the decree plaintiff appealed.

I. There was much conflict in the evidence as to the effect that was intended by the parties should be given the note for $3,500, and the deed of trust to secure the same, known in this record as exhibit "F." We think the evidence quite conclusive that the notes and deed were executed with the understanding that O'Reilly should furnish and use the money in paying the three prior deeds of trust (A, B and C), provided that it was found on examination of the title that a first lien on the land would thereby be secured. When it was found that there were other liens on the land and the proposed deed of trust would not provide a first lien, that arrangement was abandoned altogether, and it was agreed that O'Reilly should purchase the prior notes, instead of paying them, extend the time of their payment and hold them as security for the money furnished. The object of Moran was to secure time for the payment of these notes and the purpose was fully accomplished by this subsequent arrangement. The deed of trust (F) never became, as between the parties, a valid and effective instrument.

Defendant O'Reilly makes the claim here that, after he had purchased said notes, he paid a debt of $400 at the request of Moran and also paid certain interest on debts owing by him, all with the understanding that the deed of trust "F" should stand as security therefor. This claim could only be maintained upon the theory that the mortgage was intended at its execution to secure future advances. A valid "mortgage cannot be made available to secure future advances by any subsequent parol agreement, in preference to the lien of a junior incumbrance." "The agreement for the advances must be contemporaneous" with the execution of the mortgage. 1 Jones on Mortgages, section 375. As against the junior incumbrancer no new terms can be incorporated into the prior mortgage, no new indebtedness can be secured by it." Sheldon on Subrogation, section 17. Much less could a mortgage, ineffectual for any purpose, as between the parties, be subsequently vitalized by parol agreement so as to give to advances made to the mortgagor a precedence over a junior mortgage existing at the time the advances were made. The decree setting aside this deed of trust was proper.

II. The question of most difficulty is the proper application of the equitable principle of subrogation to the facts in this case. It is unquestioned under the evidence that O'Reilly, after the notes A, B and C had been assigned to Fisher, and an extension of time for their payment endorsed thereon, himself paid several instalments of interest, and the question is whether, as against the plaintiff, a junior mortgagee, he is entitled to be subrogated to the rights of Fisher, the assignee of the notes secured by the prior mortgage, and upon which the interest was paid, so as to require plaintiff to refund such interest in order to redeem.

Upon this question the chancellor made the following finding of fact: "The evidence showed that áfter the Morans ceased to pay the interest, O'Reilly advanced it for several years to the holders of the notes, and although Moran did not in fact request O'Reilly to do so, yet it was done with the knowledge and consent of the former." This finding is undoubtedly justified by the evidence. The chancellor thereupon drew the legal inference from these facts and from "the circumstances under which the interest was advanced," that the payments were made at the request of Moran.

Mr. O'Reilly himself testified: "I generally paid the interest to all my customers, Mr. Fisher included, whenever they called for it, whether I had collected it or not; that was my business habit." Now we think the circumstances entirely consistent with this declaration. O'Reilly had purchased those notes at the request of Moran. When the interest matured he made demand, collected it and gave receipts in his own name. He collected eight per cent., and by arrangement with Fisher, only accounted to him for six per cent. Fisher was not known in the transactions between O'Reilly and the Morans. O'Reilly testified that he never told any one who was the real owner of the old notes. "It was a secret in the business as to who owns the paper." Our conclusion from the evidence is, that O'Reilly advanced the interest, not at the request of Moran, but voluntarily, in his own interest, to prevent default and foreclosure and for the further purpose of maintaining his own credit with his customers.

The doctrine is well settled in this state that "the demand of a creditor which is paid with the money of a third person, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished; but the doctrine of subrogation will be applied to reimburse

one who has been compelled to pay the debt of a third person in order to protect his own rights or to save his own property." Sheldon on Subrogation, sec. 3; *Bunn v. Lindsay*, 95 Mo. 259; *Evans v. Halleck*, 83 Mo. 378; *Price v. Courtney*, 87 Mo. 395; *Kleimann v. Gieselmann*, 114 Mo. 437, and cases cited in each. We do not think that O'Reilly is entitled to subrogation for the interest paid on these notes except to the extent stated in another paragraph of this opinion.

III. Defendant O'Reilly also purchased and assigned to defendant Hacken the $1,000 note and deed of trust (E) made by Moran to Wright. This note was assigned to Hacken, the interest collected by O'Reilly and paid by him under the same circumstances and arrangement as in the case of the first three notes, with the material difference that O'Reilly absolutely assumed the payment on this note, of the semi-annual interest, and agreed to take the note back whenever requested by Hacken to do so. Under these circumstances we think O'Reilly stood in the relation of a surety to Moran and equity will imply that he requested that payment of the interest should be made. In *Evans v. Halleck, supra*, it is said "ordinarily it is only when a person pays the debt of another at his instance, or is compelled to pay to protect his own, or stand in the relation of a surety that he will be subrogated to the rights of the creditor." We think O'Reilly entitled to subrogation for the interest paid on this note.

IV. The note, exhibit "E," was re-purchased by O'Reilly from Hacken on June 8, 1888, and the last installment of interest paid to Fisher on the notes A, B and C, amounting to $105, was on October 10, 1888. At the time this payment was made, it is seen O'Reilly held a junior mortgage on the land and for the amount so paid was entitled to subrogation, under the fore-

going rules, in order to protect his own interest. *Norton v. Highleyman*, 88 Mo. 624.

V. It is claimed that O'Reilly should be made to account for the difference between the interest collected from Moran and that paid to the holders of the notes. This contention is on the theory that in negotiating the loan, and securing an extension of the notes, O'Reilly was acting as the agent or broker of Moran. An agent must act honestly and will not be allowed to make a profit out of a transaction conducted in behalf of his principal. We entirely agree that if O'Reilly was acting as agent for Moran, he could be required to account, to him at least, for the advantage obtained in the reduction of interest. Story on Agency, sec. 207.

The evidence, while somewhat conflicting, we think quite conclusive that O'Reilly did not occupy the relationship of agent to the Morans. They went to him to borrow the money, and according to their testimony, supposed all the while that he was their creditor. They do not pretend that they employed him to procure the money for them from another. His undertaking was to furnish them the money on certain conditions. That undertaking did not create confidential relations between them, though the conditions may have required them to pay the expense of an examination of the title. The parties dealt at arm's length. We are not concerned about the agreement between O'Reilly and Fisher. Under the evidence, we think O'Reilly had the right to collect interest at the rate agreed upon, and is not accountable to plaintiff for it. Judgment reversed and cause remanded with directions to so modify the decree as to make it conform to this opinion. All concur