FLOYD JACOBS and SAMUEL FELLER, Adminis-
trators of the Estate of NANCY D. MONROE,
Deceased, Appellants, v. DORA B. WEBSTER,
and EDWARD R. WEBSTER, Respondents.

### Kansas City Court of Appeals, May 20, 1918.

1. **TAXES: Subrogation: Mistake.** The plaintiff sued to recover from
the defendant taxes paid out on the wrong piece of property by
Nancy D. Monroe, now deceased. The latter during her lifetime
owned an adjacent lot to that of the defendants and by mistake
paid the taxes on their lot instead of on her own. The mistake
was made by the city and the taxpayer and the plaintiff desires to
be subrogated to the rights of the city and recover back the taxes
wrongfully paid. *Held*, that there is no power in equity to order
plaintiff or her estate, subrogated to the rights of the city so as to
enable the enforcement against the defendant's property of the
lien which the city had for taxes thereon.

2. **EQUITY: ———: ———.** The payment of a debt by one not the
debtor absolutely extinguishes the debt if there is no agreement
that the security therefor shall be transferred and kept alive for
the benefit of such payer. But equity, through the doctrine of sub-
rogation, will effect the reimbursement of the payer by substituting
him in the place of the creditor where the payer is compelled to
pay in order to protect his own rights or to save his own property.

3. **———: ———: ———.** In order that the equitable doctrine of
subrogation may be invoked, the payment must have been made
by one who at the time had, or in good faith, supposed he had, an
interest in discharging the demand.

Appeal from Jackson Circuit Court.—*Hon. O. A.
Lucas,* Judge.

AFFIRMED.

*Ed. E. Aleshire* for appellant.

*Sebree, Conrad & Wendorff* for respondent.

TRIMBLE, J.—After the appeal herein was per-
fected, Nancy D. Monroe, who was then the plaintiff,

died intestate and the cause was revived in the name of her administrators, the title being changed to conform · to such revival. So ,when we hereinafter refer to plaintiff it will be understood that we mean plaintiff's intestate and not her administrators.

Plaintiff owned the south seventy-five feet of the *east* 132.63 feet of Lot 7 in McGee Place in Kansas City. Defendants were, and now are, the owners of the south seventy-five feet of the *west* 132.63 feet of said Lot 7.

This is a suit in equity brought by plaintiff to recover the park taxes assessed against defendants' lot for the years 1914 and 1915 and, through mistake, paid by plaintiff under the erroneous belief that she was paying the park taxes on her lot. She asked judgment for the amount of said taxes, to-wit, $40.50, and prayed that she be subrogated to the rights of the city as to a lien on defendants' land. The defendants demurred to the petition. The demurrer was sustained and plaintiff stood upon her pleadings and appealed.

In addition to the ownership of the two tracts above mentioned, the petition alleged:

That the · park taxes for 1914 on defendants' lot were $20.25 and if paid during September of that year no penalty was added thereto. A similar allegation was made concerning the park taxes thereon for 1915 payable without penalty during September of that year.

That plaintiff, on and before June 1, 1914, requested the city treasurer to · furnish her a statement covering taxes, if any, unpaid on the south seventy-five feet of the east 132.63 feet of Lot 7 McGee Place so that she might pay same; that about September 28, 1914, and while she was living in Wisconsin, the city treasurer in response to her request sent her a statement of the taxes assessed against her property, as she believed; and immediately upon receipt of such statement she sent him· a money order for such taxes and received from him a receipt

which, instead of being for the property she owned, was for the property owned by defendants, the same being written in lead pencil and described as: "S. 75 ft. of W. 132.63 ft. Lot 7," instead of the *east* 132.63 feet, but that plaintiff did not notice the error, relying upon the city treasurer to send her the proper statement in reference to property owned by her; that prior to the payment by her of said taxes, her agents in Kansas City had, though without her knowledge, paid the taxes for 1914 on her property, to-wit: on the south seventy-five feet of the east 132.63 feet of said Lot 7.

That plaintiff did not learn of said error and mistake on the part of the city treasurer for a long time, and, in the following year, still being absent from Kansas City, she received a like statement from the city treasurer for the taxes due for 1915 and she immediately returned or sent him the money, $20.25, along with the blank receipt which he duly countersigned and returned to her, the property therein being described exactly as in the 1914 receipt except that it was for the year 1915; that in the meantime her Kansas City agents had, though without her knowledge, paid the taxes on her said property, to-wit, the south seventy-five feet of the east 132.63 feet of said lot 7.

That she never discovered the mistake on the part of the city treasurer nor learned that she had, through mistake, paid the taxes on defendants' property until about January 1, 1916, when she requested the defendants to pay her the said taxes, but that payment was refused.

That she had no interest in the south seventy-five feet of the west 132.63 feet, and when the receipts were sent her by the city treasurer she took it for granted and assumed the city treasurer was sending receipts to her for her own property, and that no jury or injustice would be done by defendants paying said taxes now to plaintiff.

The statements sent plaintiff by the city treasurer were in the shape of unsigned tax receipts which were afterwards signed and returned to plaintiff upon receiving her money. And each showed on its face that the property to which it referred was the S. 75 feet of the W. 132.63 feet. So that, had plaintiff examined the statements before she sent her money, she would have noticed that it did not describe her property. And while plaintiff alleges that her payments were made through the mistake of the city treasurer, yet it is manifest that she had an opportunity to observe the mistake and failed to do so. There were, therefore, two mistakes, one on the part of the treasurer and one on her part, or perhaps negligence on her part, in not discovering the fact that she was not paying on her own property.

Plaintiff, *in fact,* had no interest or apparent interest in the property actually paid on, to be protected by her payment. She was, in fact, under no compulsion either legal or moral to pay the taxes thereon, nor was she in any way requested by defendants, either directly or by implication, to pay same; nor were defendants in any way, directly or indirectly, the cause of her mistake in thinking she was paying on her own property. The question is, does she, therefore, come within any of the situations wherein equity will afford her the remedy of subrogation, that is, the substitution of plaintiff in the place of the city with all of its rights as a creditor of the defendants for the taxes due from them on their lot, thus making defendants debtors of the plaintiff without their consent and without their having done anything to create that relation or to bring about the situation? The rule is unquestioned that the mere payment of the debt of another by a volunteer or by a stranger will not confer the right of subrogation. If a stranger makes such a payment he cannot obtain the benefit of subrogation in the absence of an agreement to that effect from the debtor. In such case one cannot make another his debtor without the latter's

consent. And if there is no debt there is no ground for subrogation. [37 Cyc. 375-6.] The payment of a debt by one not the debtor, absolutely extinguishes the debt if there is no agreement that the security therefor shall be transferred and kept alive for the benefit of such payer. [Sheldon on Subrogation, sec. 3.] But equity, through the doctrine of subrogation, will effect the reimbursement of the payer by substituting him in the place of the creditor where the payer is compelled to pay in order to protect his own rights or to save his own property. [Norton v. Higleyman, 88 Mo. 621; Grady v. O'Reilly, 116 Mo. 346; Roberts v. Best, 172 Mo. 67; Cape Girardeau Bell Tel. Co. v. Estate of Hamil, 153 Mo. App. 404.] And it is only in these or like situations that equity will afford such relief. [37 Cyc. 375.]

However, it is insisted that plaintiff was not a stranger nor a mere volunteer, but was led in good faith to believe the taxes were those on her property and she intended to pay, and thought she was paying, them, and hence she ought not to be regarded as a pure volunteer. "A stranger or volunteer, as those terms are used with reference to the subrogation, is one who, *in no event resulting from the existing state of affairs*, can become liable for the debt, and whose property is not charged with the payment thereof and cannot be sold therefor." [Arnold v. Green, 116 N. Y. 566, 573.] (Italics ours). It is true, it is sometimes difficult to ascertain when the payment of a debt by a third person will be considered to have been made by a mere stranger or volunter. [Sheldon on Subrogation, sec. 245.] And there are authorities which say that payments made in ignorance of the real state of facts cannot be said to be voluntary, and that where a person has paid a debt under a colorable obligation to do so, in order that he may protect his own claim, or under an honest belief that he is bound, he will be subrogated; also that one who mistakenly but in good faith believes he has an interest in property to protect which he discharges a

lien, will be subrogated to the lien for his repayment. [37 Cyc. 378-9.] And in Roberts v. Best, supra, at page 81, the opinion remarks "that before the equitable doctrine of subrogation can be invoked . . . the payment must have been made by one who at the time had, *or in good faith supposed he had,* an interest in discharging the demand." (Italics ours). But, in the case at bar, plaintiff sustained no relation whatever to defendants' lot. There were no circumstances which led her to think she was interested in *it* or that she ought to pay the lien on *it*. She was seeking only to care for her *own* property, a different tract entirely; and she paid on defendants' lot only by reason of her own and the treasurer's mistake. An examination of the authorities holding that one is not a volunteer or stranger who, in ignorance of the true facts, pays to protect his own claim or because he believes himself to be bound, or where he believes in good faith he has an interest, will disclose that the one thus paying, and allowed to be subrogated, sustained some relation to the property paid on, *other than that brought about by a mere mistake as to the identity of the property* with which he was dealing. [For exemple, see Lewis, Admr., v. Chitlick, 25 Fed. 176; Cobb v. Dwyer, 69 Me. 494; Muir v. Berkshire, 52 Ind. 149; Cockrum v. West, 122 Ind. 372; Fowler v. Parsons, 143 Mass. 401; Dwante v. Eannaco, 72 N. Y. Supp. 1048.] In some, if not all of these cases, the party paying did have an interest in the particular property paid on and hence came within the provisions of the general rule; at any rate in all of them the one making the payment sustained some relation to the particular property paid on and intended to be affected, by reason of circumstances actually existing, and not through a mere mistake as to the identity of the property dealt with. But here, as stated, plaintiff's payment arose solely out of a mistake of this character, and it is a mistake with which defendants had nothing to do. This is not a suit to recover money

199 M. A.—39.

*from the other party to a transaction* on the ground that it was paid to him under mistake; but it is a proceeding to make defendants debtors to plaintiff by substituting the latter in the city's place. It may not be out of place to observe here that but for the separate payment by both plaintiff and her agents, independently of and without consulting each other, there would not have been but one payment on each year's taxes; and, therefore, even if plaintiff's payment had been by the treasurer erroneously credited to defendants' lot, she would have had a remedy against the city or the treasurer to correct that and have her payment properly applied without attempting to invoke the equitable doctrine of subrogation against defendants. However this may be, the facts stated in the petition disclose that the only ground upon which she sought to obtain the remedy of subrogation is that of mistake on her part and the part of the city treasurer. In such case, the rules of equity afford no such relief. It is not a question of what the defendants or one in their situation, if actuated by the highest sense of honor or the desire to be a "thoroughbred," would or should do. It is a question of the *existence of the power in equity* to make them do, or rather of the power to put plaintiff in the city's place where she or her estate can make them act. However, the only ground upon which a noble spirited person would feel impelled by high principles to repay plaintiff, is that, by the payment she made, she had relieved his property of a burden it would inevitably have had to bear. As to this, it will be noticed that there is no such allegation in the petition, save the one that no injustice would be done to defendants in paying said taxes to plaintiff. This, however, would seem to be only a legal conclusion unless the allegation that the payment made by plaintiff carries the necessary inference that thereby defendants were relieved of the payment of their taxes.

Be this as it may, however, we have not the power in equity, under the circumstances disclosed, to order plaintiff, or her estate, subrogated to the rights of the city so as to enable the enforcement against the defendants' property of the lein which the city had for the taxes thereon. Hence, we affirm the judgment. All concur. *Ellison, P. J.,* in separate opinion.

ELLISON, P. J., (concuring)—I concur in the foregoing opinion for the reason that the petition is based upon plaintiffs alleged right to be subrogated to the city. But I think if one, by mistake, pays the debt of another and that other acquiesces by accepting the discharge of his indebtness, he is liable to the party who pays his debt. While the payment of taxes on land is not the payment of a debt, in the strict sense, it amounts to the same thing; if the party for whom the payment is made accepts and adopts, without protest, the discharge of his land from the lein for such tax.