## In re BALTIMORE PEARL HOMINY CO.

### (District Court, D. Maryland. January 7, 1923.)

1. **Internal revenue ⊕⇒26—Demand necessary to create lien for tax.**

   Under Rev. St. § 3186, as amended (Comp. St. § 5908), providing that, if any person liable for a tax shall neglect or refuse to pay the same after demand, the amount shall be a lien on his property, a demand is necessary to create a lien.

2. **Bankruptcy ⊕⇒346—Provision for payment of taxes effective only where taxes are due after bankruptcy.**

   The provision of Bankruptcy Act, § 64a (Comp. St. § 9648), requiring payment of taxes, does not become effective unless there are taxes due after the bankruptcy, and cannot be given effect to subrogate a third person, paying the taxes before bankruptcy, to priority of payment.

3. **Bankruptcy ⊕⇒349—Priority of debts due United States.**

   Under Rev. St. § 3466 (Comp. St. § 6372), giving priority to debts due the United States in cases of insolvency, no lien is created, and the priority does not attach until the debtor has been divested of his property in one of the modes stated therein, in which case the person who is invested with the title becomes trustee for the United States and is bound to pay its claim first out of the property.

4. **Bankruptcy ⊕⇒346—Creditors advancing money to pay tax prior to bankruptcy held not entitled to priority.**

   Where a tax due the United States from bankrupt corporation was paid prior to the bankruptcy, when bankrupt was in possession of its property, the United States had no lien or right of priority of payment to which third parties, who advanced the money to make the payment, could be subrogated after bankruptcy.

5. **Taxation ⊕⇒531(2)—Payor of taxes for another cannot be subrogated by contract to tax lien.**

   In the absence of a statute permitting officials to assign tax claims, an owner of property cannot by contract subrogate one who furnishes money to pay taxes thereon to the tax lien.

In Bankruptcy. In the matter of the Baltimore Pearl Hominy Company, bankrupt. In the matter of the claims of the Union Trust Company and others. Claim to priority of payment denied, and claims allowed as unsecured debts.

Bartlett, Poe, Claggett & Bland, of Baltimore, Md., for trustee.
James Morfit Mullen, of Baltimore, Md., for claimants.

---

SOPER, District Judge. The matter for determination is the character of the claims of the Union Trust Company and other banks against the bankrupt estate. The claimants contend that they are entitled to priority of payment out of the assets in the hands of the trustees for the sum of $35,000, advanced by them for the purpose of making a payment to the United States in a compromise settlement of its claim for federal taxes against the Baltimore Pearl Hominy Company before it was adjudicated bankrupt.

The facts are that on July 10, 1920, the Commissioner of Internal Revenue addressed a communication to the Baltimore Pearl Hominy Company to the effect that additional income and excess profit taxes for the taxable period May 31, 1916, to December 31, 1917, and for the calendar year of 1918, had been found to be due, in the sum of $359,899.54. Explanations in detail of the adjustments of the return, resulting in the additional claim of the government, accompanied the letter. The letter contained the following clause:

"This is not a notice of assessment, and no payment is required in connection herewith until you receive formal notice from the collector of internal revenue of your district."

Some time between July 10, 1920, and February 11, 1921, the bankrupt employed the firm of Humphreys, Day & Co. of New York City as counsel to secure a reduction or compromise of the government's claim. On February 11, 1921, the banks and the Baltimore Pearl Hominy Company sent a letter to Humphreys, Day & Co., stating that it was the understanding of the writers that the government's claim could be compromised for approximately $35,000, and that the lawyers' fee would be $20,000; that the hominy company was financially unable to make payment of any sum to the government, but that the banks were willing to advance the funds necessary to make the compromise settlement and pay the fee. The letter also contained the following clause:

"It is distinctly understood that, in so far as the parties hereto are able to do so, the undersigned banks shall be entitled to be subrogated to all of the rights of the government, as to a prior lien for such amounts paid to the government for said taxes, and further that we shall receive notes of the Baltimore Pearl Hominy Company covering such advances as may be made under this agreement."

The Hominy Company joined in the agreement and assented to the provision in regard to subrogation, and the check of the Union Trust Company, dated February 23, 1921, for $35,000, payable to the Baltimore Pearl Hominy Company, indorsed by it to the Commissioner of Internal Revenue, and by him to the order of Joshua W. Miles, collector of internal revenue at Baltimore, was placed in the hands of the Commissioner of Internal Revenue in furtherance of the understanding that the government would compromise its claim for that sum.

The matter seems to have stood still until March 18, 1921, at which time the said check had been turned over by the Commissioner of Internal Revenue to the collector of internal revenue at Baltimore. The latter preferred for some reason to have the check payable directly to him, as collector, and requested that a check so payable be substituted

for the check of February 23, 1921, above mentioned. This request was apparently made to the Baltimore Pearl Hominy Company. Mr. Haynie, the treasurer of that company, testified that the check of February 23, 1921, was given to the government in compromise of its claim, and that the check was not accepted, but was brought back because of the notation on the back. Thereupon another check of the Union Trust Company, bearing the same date, for $35,000, payable to Joshua W. Miles, collector of internal revenue, was secured and accepted. This last-mentioned check was drawn and issued on March 18, 1921, and was dated back to February 23, 1921, because it was to be used in substitution of the prior check.

On March 17, 1921, the collector of internal revenue at Baltimore received from the Commissioner of Internal Revenue an assessment of income and excess profit taxes against the Baltimore Peal Hominy Company, in the sum of $72,192.34. Presumably he was at the same time in possession of the first check, for on the next day the exchange of checks was effected, and the second check was deposited to the credit of the collector at Baltimore.

The claim of the banks is that, at the time the compromise payment of $35,000 was accepted by the government, the government was entitled to a lien on the property of the bankrupt, and that it was also entitled to priority of payment of its claim for taxes, and that the banks, having paid to the government the amount of the tax with the express understanding and agreement, by the banks on one hand and the Hominy Company on the other, that the banks should be subrogated to all the rights of the government, are now entitled to preferential payment, since the hominy company is in bankruptcy. It is important, therefore, to determine at the outset whether or not on March 18, 1921, the United States had either a lien or the right to prior payment of its claim for taxes against the Baltimore Peal Hominy Company.

[1] First—As to the lien: It is contended that the lien of the government is provided by section 5908 of the Compiled Statutes, which provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, * * * with the interest, penalties, and costs that may accrue in addition thereto upon all property and rights to property belonging to such person."

It is conceded that a demand on behalf of the United States for the payment of taxes was necessary under the statute to create the lien and bring it into operation. It is stipulated in the case that no notice was given, and that no written or oral demand was made, by the collector for the payment of the tax assessed, except such oral demand, if any, as may appear from the evidence. The only evidence on this point relates to the substitution of one check for another, as above outlined. Unless this transaction constitutes a demand, no demand was made by the United States, and no lien came into existence. The request of the collector to the Hominy Company to furnish a new check in place of the first one did not constitute a demand for the payment of taxes. The federal statute cited indicates that the demand shall be based upon the assessment. The assessment in this case against the hominy

company was for the sum of $72,192.34, and it was this amount which the collector would have and should have demanded, if he had proceeded in the usual course; but he was not proceeding in the usual course, for the evidence discloses that, when the assessment list was received by the collector on March 17, 1921, the authorities had agreed to accept, on behalf of the United States, the sum of $35,000. The evidence indicates that the collector at Baltimore had been of material assistance in securing the acceptance of the offer of compromise. The substitution of the checks was merely an incident in the course of putting the compromise in effect, and was not such demand as the statute contemplated.

Second—As to the priority of the United States: It is contended that on March 17, 1921, the United States was entitled to a prior right to payment of this tax over and above all other claimants. At that time the Hominy Company was engaged in carrying on its business in the usual way. A bill for receivership was filed against it in the state court on April 4, 1921, a petition in bankruptcy in the United States court on April 27, 1921, and it was adjudged a bankrupt on May 6, 1921. It is urged that the priority right of the United States is based on section 64a of the Bankruptcy Act (Comp. St. § 9648), and also on section 6372 of the Compiled Statutes.

[2] Section 64a of the Bankruptcy Act provides that the court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of payment of dividends to creditors. This provision manifestly applies only to assets in bankruptcy, and the priority given to the governmental bodies does not arise until adjudication in bankruptcy takes place. If the taxes have been paid prior to the adjudication, they no longer exist, and the priority referred to in the section never comes into existence.

[3] There is, however, a general statute of the United States with reference to debts due by or to the United States. Section 3466 of the Revised Statutes (Compiled Statutes, § 6372) provides:

"Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

This right of priority is not an attribute of sovereignty, but depends on the acts of Congress. U. S. v. State Bank of N. C., 6 Pet. 29, 8 L. Ed. 308. Under this act, these rules have been clearly established. First, no lien is created; second, the priority established can never attach while the debtor continues the owner and in possession of the property, though he may be unable to pay all his debts; third, no evidence can be received of the insolvency of the debtor until he has been divested of his property in one of the modes stated and, fourth, whenever the debtor is thus divested of his property, the person who becomes invested with the title is thereby made a trustee for the United States, and is bound to pay the debt first out of the proceeds of the debtor's

property. Beaston v. Farmers' Bank, 12 Pet. 102, 9 L. Ed. 1017; See Cook County National Bank v. U. S., 107 U. S. 445, 2 Sup. Ct. 561, 27 L. Ed. 537.

[4] It follows that under neither of the provisions of the federal law did the United States have the right to prior payment on March 18, 1921. Such rights would have arisen, had the taxes remained unpaid after the Hominy Company had been declared bankrupt; but the payments were made by the banks at the time the company was in control of its own affairs and engaged in the active conduct of business, and no priority rights existed in the United States. If these conclusions are correct, the United States had neither a lien nor a right to prior payment when the obligation of the hominy company to the United States was discharged, to which the banks could be subrogated; but, if in fact such lien did exist, it does not necessarily follow that the banks, having paid the taxes, are entitled to subrogation.

[5] It is generally held that persons possessed of a real or apparent interest in the property, who pay taxes thereon in order to protect it, are entitled to subrogation to the right of the taxing power. Equitable Trust Co. v. Kelsey, 209 Mass. 416, 95 N. E. 850, Ann. Cas. 1912B, 750; Title Guarantee & Trust Co. v. Haven, 196 N. Y. 487, 82 N. E. 1082, 1085, 25 L. R. A. (N. S.) 1308, 17 Ann. Cas. 1131. See the notes to these cases in Ann. Cas. 1912B, 750, and 17 Ann. Cas. 1131; 25 R. C. L. 1365 to 1368; Dayton v. Stanard, 241 U. S. 588, 36 Sup. Ct. 695, 60 L. Ed. 1190. But the banks in this case did not make the payment under compulsion and had no interest in the property.

It is contended, however, that they acquired the right of subrogation by reason of the clause in the agreement between them and the Homing Company hereinbefore set out. There are many cases which hold that a volunteer or stranger is entitled to subrogation, who pays the secured debt of another in pursuance of an agreement that the payor shall have the same priority as the holder of the security. Indeed, in such a case, he ceases to be the volunteer. 25 R. C. L. 1316, 1317, 1339; 37 Cyc. 368, 369, 469. But no authority has been cited or found which extends this doctrine, so as to transfer the tax lien of the state to one who, without interest in the property, pays the tax of another under an agreement with him for subrogation. The weight of authority is to the effect that, in the absence of a statute permitting tax officials to assign tax claims, the owner cannot by contract confer the right of subrogation. In other words, the owner cannot by his contract accomplish what the state itself would have no power to do by assignment. Gibson v. Western & Southern Life Assurance Co., 161 Ky. 810, 171 S. W. 390. See the cases cited in the note to this case, L. R. A. 1915D, 696; Mercantile Trust Co. v. Hart, 76 Fed. 673, 22 C. C. A. 473, 35 L. R. A. 352; Mersick v. Hartford, 76 Conn. 11, 55 Atl. 664, 100 Am. St. Rep. 977; Valdosta Bank v. Pendleton, 145 Ga. 336, 89 S. E. 216; Belleclair Planting Co. v. Hall, 125 Ark. 203, 188 S. W. 574; Jacobs v. Webster, 199 Mo. App. 604, 205 S. W. 530; Cooper Grocery Co. v. Bryan, 127 Fed. 815, 62 C. C. A. 495; 2 Collier on Bankruptcy (13th Ed.) 1453; 2 Remington on Bankruptcy (2d Ed.) §§ 2148, 2149, 2278, and 2281.

It follows that the claims of the banks to be allowed priority of payment, out of the assets of the bankrupt estate in the hands of the trustee, for the amounts actually advanced by them for the payment of taxes, must be denied, and that these claims must be allowed only as unsecured claims.