[L. A. No. 1064. Department One.—June 10, 1902.]

ELLEN HUDDLESTON, Respondent, v. HARRIET WASHINGTON and W. H. WASHINGTON, Appellants.

TAXES—LIFE ESTATE—ASSESSMENT AGAINST OWNER OF FEE—ASSUMP- SIT—JUDGMENT ENFORCING LIEN.—Where taxes were assessed against the owner of the fee in which another owned a life interest, and were wholly paid by the owner of the fee, a judgment in his favor in an action of *assumpsit* to recover against the life tenant one half of the taxes paid for his use, cannot be decreed to be a lien on the life estate.

ID.—VOLUNTARY PAYMENT—ACTION NOT MAINTAINABLE.—Where the owner of the fee voluntarily caused the entire property to be assessed to him, and voluntarily paid the taxes before they became delinquent, without any request from the life tenant, notwithstanding the duty of the life tenant to pay the taxes on the life estate, the life tenant did not become the debtor of the owner of the fee or liable to him by such voluntary payment, and the action of *assumpsit* is not maintainable.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion.

John W. Kemp, for Appellants.

J. L. Murphy, for Respondent.

CHIPMAN, C.—Plaintiff's action was to recover from defendant Harriet Washington one half of the taxes paid by plaintiff on certain real property in the city of Los Angeles. Plaintiff had judgment, from which and from the order denying their motion for a new trial defendants appeal.

The court found the following facts: Defendants are husband and wife, and the husband is joined for that reason only; that plaintiff is the owner in fee of the south half of lot 3, block 7, Ord's Addition, fronting sixty feet on Spring Street; defendant Harriet Washington owns a life estate in the north half of the lot, and the remainder is owned by plaintiff; a building constituting three storerooms, with a common entrance in the house to the second story, occupies the entire frontage, there being a difference in the value of the north and south half of the lot of $900. The entire lot was assessed to plaintiff for the year 1899, and the tax levy amounted to $1,556.76; the first installment thereof became due the second Monday of October, 1899, and delinquent the last Monday in November, 1899, and if not then paid a penalty of fifteen per cent would attach. Prior to said last-mentioned time plaintiff requested defendant Harriet to pay one half of said tax, but she neglected and refused to do so, and to prevent the said tax from becoming delinquent plaintiff was compelled, and did, on November 27, 1899, pay all said first installment,—to wit, $778.18. Because of the un-

equal value of the north and south half of the lot and improvements, the court found that there became due and owing plaintiff from defendant Harriet $376.18, being less than one half of the amount claimed. Plaintiff offered to pay the tax collector the tax levied on the south half of said lot, which he refused to receive, and she thereupon paid the whole to prevent the property from becoming delinquent. The court further found that it was the duty of defendant Harriet to pay plaintiff upon the first installment said sum of $376.18, and that plaintiff paid the same for the use and benefit of said defendant on November 27, 1899, no part of which has been repaid, and unless plaintiff had so paid said tax it would have become delinquent and a penalty would have attached thereto. "The court further finds that the defendant Harriet Washington did not request said plaintiff not to pay said taxes, and further finds that she did not expressly request plaintiff to pay the same, but was present when they were paid by plaintiff, and did not object to the payment of the same by her; . . . that during all the year 1899 defendant received an income from said property, an average of $175 per month, and said income was more than sufficient to pay all the taxes assessed against said property."

As conclusions of law, the court found "that defendant Harriet is indebted to plaintiff in the sum of $376.18, with interest from November 27, 1899; that said payment by plaintiff was not voluntary, but she was compelled to make said payment in order to prevent the taxes on her own property from becoming delinquent; that she was the owner of the estate in remainder of the property in which said Harriet owned said life estate; that plaintiff is entitled to judgment for said sum, and that said judgment shall be a lien upon the said life estate of said defendant Harriet Washington, and that said judgment shall provide that said property may be sold to satisfy said amount." Judgment was so entered.

Appellants challenge most of the findings of fact as not supported by the evidence; that the judgment is against law and unsupported by the evidence. Appellants contend that the payment by plaintiff was voluntary and unauthorized; that plaintiff officiously interfered with defendants' property and caused it to be assessed with plaintiff's, and is estopped

by her own act from recovering in this action; that plaintiff had no legal right to pay the taxes on defendants' property, and in doing so her interference was unauthorized; that the payment was not compulsory, and was without duress of person or of property; that the judgment is erroneous as decreeing a lien upon defendants' property to satisfy the judgment.

It appears from the undisputed evidence that the property came to plaintiff and defendant Harriet by devise of Biddy Mason, their mother, and prior to 1899 the assessment was made to the heirs of Biddy Mason, and each paid one half, except in 1898. It was so assessed as one piece of property in 1898, and at the time the assessment was made for 1899 a suit was pending between the parties to compel defendant Harriet to pay her share of the second installment of taxes for that year. Defendant Washington, husband and agent of his wife in respect of the property, testified that in April, 1899, he had a conversation with R. C. Owens, son and also the acknowledged agent of plaintiff, in which Washington told Owens that he "did not want his mother to interfere with the property of Mrs. Washington," and that "he did not want his mother nor himself to have anything further to do with the property, and to let the taxes alone and we would pay our taxes." In May following this conversation plaintiff returned the lot to the assessor, under the usual form and oath, as her own property, and caused the entire interest to be assessed to her for 1899. Several days before the first installment became due Owens saw Washington and told him the taxes ought to be paid, and asked him to pay half of the amount due. Owens testified: "He told me he would see about it; that he did not know what he would do about the taxes." The taxes were paid by Owens the day before they became delinquent, and he testified that Washington was present and saw him make the payment, and "that he made no objection and did not offer to pay his part . . . or anything on the part of his wife." Plaintiff testified that she decided "to have all the property assessed to" herself "as the property before that was assessed to the heirs of Biddy Mason." She further testified: "Neither Mrs. Washington nor any one else ever requested me to have her portion of the property assessed in my name, nor to pay the taxes on the same." It

was stipulated that prior to the time for equalization of the tax-roll Washington learned that the property was assessed to plaintiff, ''but made no effort to have the assessment upon the same corrected or to show that his wife, Harriet Washington, owned any interest therein, or that any part should be assessed to her.'' It was also admitted that Mrs. Washington obtained rent for her portion of the property, an average of $175 per month. There was evidence by plaintiff's attorney that he had stated to Washington, after the taxes became due, that plaintiff desired him (Washington) to pay his part of the taxes, and that plaintiff was ready at any time to pay her part.

1. The action was for money paid by plaintiff to the use and benefit of defendant—an action at law pure and simple. We know of no statute or principle of law that would entitle plaintiff to a judgment decreeing a lien on the property, and that it be sold to pay the judgment. Like any other money judgment, it became a lien on the property, and could be enforced in the usual way, by execution, but not otherwise.

2. The remaining question, when reduced to its simplest form, is: Can A, a remainder-man, voluntarily cause the property of B, the owner of the life estate, to be assessed to him (A), pay the taxes thereon without the authority of B before they become delinquent, and have his action at law to recover the amount from B as for money paid to his use and benefit? In answering the question it may be admitted that it is the duty of the life tenant to pay the taxes (Civ. Code, sec. 840); and if he fails, and they become delinquent, and the property is about to be sold, thus endangering the remainder-man's estate, the latter may invoke the aid of a court of equity to have the rents applied to the protection of the property. (2 Desty on Taxes, p. 938, and cases cited.) Such is not the case here. The tenant in remainder voluntarily chose to have the property assessed to her against the wish of the tenant for life and without her authority, and before the taxes became delinquent she paid them. There was neither compulsion nor duress here, as the law regards compulsion, and if it can be said, as the court found, that she paid the taxes to prevent the penalty from attaching, it was the result of her own unwarranted and officious inter-

ference with the property of another. We do not think the
fact that defendant knew the property was assessed to plain-
tiff, and knew she was about to pay the taxes, and interposed
no objection, in any way affects the question. Nor does the
fact that plaintiff demanded of defendant to pay half of the
assessment give plaintiff any additional right. Defendant
may have refused or neglected to pay as demanded because,
as the court found, the two interests assessed—the north and
south half of the lot—were of unequal value. The payment
of the taxes, if compulsory at all, was not made through the
compulsion of defendant, but solely to avoid a penalty for
non-payment, to be enforced by the officers charged with
collecting the tax; so far as defendant was concerned, she
in no wise was party in enforcing payment, and "a payment
is not to be regarded as compulsory, unless made to emanci-
pate the person or property from an actual and existing
duress, imposed upon it by the party to whom the money is
paid." (*Mayor* v. *Lefferman,* 4 Gill, 425,[1] cited in *Bruma-
gim* v. *Tillinghast,* 18 Cal. 265.[2]) There was no more com-
pulsion put upon plaintiff the day before the tax became
delinquent than if she had paid the taxes the next day after
they became due and payable. There is in the case nothing
to show an agreement by defendant with plaintiff to pay any
portion of this tax, and "no man can be a debtor for money
paid, unless it was at his request" (*Curtis* v. *Parks,* 55 Cal.
105); and it must be proved, either directly or presumptively,
that the defendant requested the plaintiff to lay out the
money for his use. (*Moulton* v. *Loux,* 52 Cal. 81.)

It was stated in *McGee* v. *San Jose,* 68 Cal. 91, to be "a
well-settled principle of law that one person cannot, without
authority, pay the debt of another and charge the amount
so paid against the party for whose benefit the payment was
made."

We think plaintiff by voluntarily causing the property
to be assessed to her became primarily liable for the taxes,
and when she paid them without the request of defendant,
it was a voluntary payment, for which defendant is not liable
to plaintiff.

---

[1] 45 Am. Dec. 145, and note.          [2] 79 Am. Dec. 176.

Some of the material findings are unsupported by the evidence and the decision is against law.

We recommend that the judgment and order be reversed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Harrison, J., Garoutte, J., Van Dyke, J.

*Hearing in Bank denied.*

Beatty, C. J., dissented from the order denying a hearing in Bank.