MARY BARANOWSKI, Respondent, *v.* FRANK WETZEL and
Others, Appellants.

Second Department, October 20, 1916.

Real property — tax — credit of payment to wrong owner by error of
municipal authorities — suit to charge lands of persons benefited
with lien — foreclosure of lien — subsequent sale of lands on
foreclosure.

Where owing to a confusion in the assessment rolls of a city, two sepa-
rate and distinct parcels of land owned by different persons were
described as being of the same number and located on the same block
in the same ward, and one of the owners in good faith paid his assess-
ment but the tax clerk inadvertently credited the amount to the other
landholder, the person who made the payment, being unable to obtain
reimbursement from the person benefited thereby, may maintain a suit
in equity to impress the lands with a lien for the amount of the pay-
ment. In such action the court may decree that the lien be foreclosed
and the land sold in satisfaction thereof.

In the circumstances the plaintiff was not a volunteer so as to be
unable to make himself a creditor of the owners of the other lots by thus
paying their debt.

The aforesaid remedy exists even after the premises pass through a sale
on foreclosure, subsequent to the mistaken tax payments, where the
persons purchasing on foreclosure advance no cash other than the amount
of the referee's fee.

In the circumstances it is immaterial that the decree foreclosing the
lien gave a remedy by sale in advance of the time when the city could
have enforced payment of the taxes due, thus accelerating the remedy,
for even in the absence of a tax clause in a mortgage the mortgagee, by
the law of this State, may pay the taxes and add them to the lien.

APPEAL by the defendants, Frank Wetzel and others, from
a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Queens on the
21st day of December, 1915, upon the decision of the court after
a trial at the Queens County Special Term.

*Charles Jaffa* [*Charles Reinhardt* with him on the brief],
for the appellants.

*Yorke Allen*, for the respondent.

PUTNAM, J.:

Plaintiff in 1898 purchased two lots in what had been known as Maspeth, which are referred to as the "Jay Avenue" lots, described in the city assessment roll as lot 35, block 24, in the second ward of the borough of Queens. In 1909 Frederick and Gustav Raber acquired the William street lots in what before consolidation had been Newtown. In the assessment roll (but in a different volume) they were also described as lot 35, block 24, in the second ward of the borough of Queens. In the second ward of that borough were still other lots described by these same lot and block numbers.

On the tax *maps*, plaintiff's lot 35, block 24, is upon a page labeled "Maspeth" in a volume of maps entitled second ward, volume *3*, Newtown, Queens. Defendants' lot 35, block 24, appears on a page labeled "Malvina" in a volume of maps entitled second ward, volume *2*, Newtown, Queens. But the assessment roll, in several volumes, contained no location *data* other than the ward, block and lot numbers, having no allusion or indication to Malvina or to Maspeth, or other means to check up the sites where the lots described as lot 35, block 24, ward 2, really were. It now appears that the assessment on plaintiff's lots came in volume 7 of the assessment roll, while defendants' lots were in volume 4 of that roll.

Prior to the confusion by these double lot numbers, plaintiff had paid the 1911 taxes under assessment roll, volume 7. In May, 1912, plaintiff's husband called at the tax office and handed the clerk the receipted 1911 tax bill, and asked a bill for the first half of 1912.

Although the 1911 bill referred to volume 7, the tax clerk, in making out the new bill, inadvertently transcribed the amounts from the page of volume 4, and this bill (which in fact covered the William street lots owned by the Rabers) was thereupon paid. Having given to the proper officer a voucher relating to plaintiff's lands and asked a bill for the same, plaintiff's reliance was natural and excusable. The error was repeated through three more half-yearly payments. These Raber lots, however, had been mortgaged to Annie Wetzel in 1909, which mortgage, in 1910, she assigned with a guaranty to defendants Philip Haslach and Frances Haslach.

On August 27, 1914, the assignees Haslach began to foreclose the mortgage in the Queens County Court, and had judgment on October first. To comply with the assignor's guaranty, Frank Wetzel bid in the lots for $50, and took and recorded the referee's deed thereof, and thereafter discharged the expenses of foreclosure as well as all taxes and assessments standing against the lots. He then gave Haslach a new mortgage for $2,200 on the northerly half of the William street lots.

In 1914 plaintiff first learned of these erroneous tax payments, and, having vainly sought reimbursement from those benefited, began this action in equity seeking to impress a lien on the lots. The trial court found that in making these tax payments, plaintiff had not shown such neglect as would bar relief in the absence of some estoppel based upon a new investment of outside capital in reliance on the record of taxes as paid and discharged. The court found that, since her payments, no change of title which could be deemed a new investment had been incurred upon the faith of records of these lots discharged from the above taxes. Plaintiff was accordingly adjudged a lien for $194.58 with interest, on the William street lots. The court, retaining jurisdiction to give full relief, by further clauses of the decree directed that these lots be foreclosed and sold in satisfaction of such lien, with interest and costs. Defendants Haslach and Wetzel have taken separate appeals.

Appellants argue that plaintiff was but a volunteer, and, therefore, could not make herself a creditor of these lot owners by thus paying their debts. "But payment of a debt by a stranger should, it is submitted, operate as a discharge of the debt and a defense for the debtor only where ratified by the latter. * * * While the debtor should have a perfect right to repudiate such payment, and to refuse to indemnify the stranger, he should not at the same time be allowed to claim the benefit of the stranger's payment." (Pom. Eq. Rem. § 921, n. 86.) It seems a strange perversion to say that, as to these tax payments misapplied by the tax clerk's error, plaintiff was a "volunteer." (See Brandt Suretyship [3d ed.], § 325.)

In *Waite* v. *Leggett* (8 Cow. 195) it was held that to con-

stitute a voluntary payment the money must have been paid with knowledge of facts, which showed no liability to pay, and even with knowledge that it ought not to be paid. In *Mayer* v. *Mayor, etc.* (2 Hun, 306), plaintiff paid an assessment which it appeared had actually been laid upon another lot in the same street. His right to recover was held to rest " on the principle that in equity and good conscience the money should be restored " where so paid under a plain, palpable mistake. (See, also, *Lesster* v. *Mayor*, 33 App. Div. 350; affd., 161 N. Y. 628, and Pom. Eq. Juris. [3d ed.] §§ 838, 852.) No contract is necessary upon which to base the right, for it is founded upon principles of equity and may be decreed where no contract exists. (*Pease* v. *Egan*, 131 N. Y. 262.)

The remedy by subrogation has been seized upon to accomplish what is just and fair as to payments made to protect supposed interests, although such interests proved to be illusory. (*Zimmermann* v. *Haller*, 91 Misc. Rep. 273; *Stiebel* v. *Lissberger*, 166 App. Div. 164.) In this way assessments mistakenly paid were ordered reinstated as against proceeds of lands sold. (*Title Guarantee & Trust Co.* v. *Haven*, 196 N. Y. 487, 495.) One who had mistakenly paid another's transfer tax was declared subrogated to the rights of the State for such tax with interest. (*Matter of Wilcox's Estate*, 118 N. Y. Supp. 254.)

Because of the change of record title plaintiff probably could not recover back these taxes from the city. (*Curnen* v. *Mayor*, 79 N. Y. 511.) The remedy of reviver by subrogation and foreclosure sale is illustrated by *Lanier* v. *Hoadley* (42 App. Div. 6. See Pom. Eq. Rem. § 924.)

· The court below by its finding has relieved plaintiff from any imputation of negligence. Even without such an affirmative finding her equitable relief would not be barred in this State. (*Mayer* v. *Mayor*, 63 N. Y. 455.) The natural reliance on the tax clerk has before been judicially referred to. (*Dietrich* v. *Mayor*, 5 Hun, 421, 422; *Pinchbeck* v. *Mayor*, 12 id. 556.)

Neither Frank Wetzel as purchaser upon this foreclosure nor the defendants Haslach as mortgagees are to be treated as strangers having made new investments on the faith of the tax records. (*Westbrook* v. *Gleason*, 79 N. Y. 23, 28; *Ten Eyck* v. *Witbeck*, 135 id. 40, 49; *Clute* v. *Emmerich*, 99 id. 342; *Emi-*

*grant Industrial Sav. Bank* v. *Clute,* 33 Hun, 82; 37 id. 644; 114 N. Y. 634.)

It is, however, urged that the relief granted by the foreclosure provisions of the judgment gave a remedy by sale in advance of the time when the city could have enforced payment of these taxes, hence that defendant should not suffer by such acceleration of remedy. But this is an incident to equitable foreclosure. Without any tax clause in the mortgage the mortgagee in this State may pay taxes on the mortgaged land, and add this to the lien and foreclose for the whole amount. (*Sidenberg* v. *Ely,* 90 N. Y. 257.) To direct a sale is to give a remedy not dependent on the tax law, but one which inheres in the enforcement of obligations recognized as equitable liens.

I advise, therefore, that the judgment be affirmed, with costs.

CARR, STAPLETON and RICH, JJ., concurred; JENKS, P. J., not voting.

Judgment affirmed, with costs.