## ADAMS *et al. v.* TAYLOR.[*]

(Division A.   March 12, 1928.)

[115 So. 878.   No. 26980.]

TAXATION.   *One paying another's taxes without request because they were erroneously assessed to her was "volunteer" and could not recover sum paid; "subrogation."*

   Where land in 1918 was assessed to estate of A. through whom complainants asserted title, but record was changed by pencil mark so as to assess land to defendant, and defendant, without knowledge or consent .of complainants, paid taxes thereon, defendant was "volunteer" and could not recover sum paid, since there was neither conventional subrogation nor subrogation by implication; "subrogation" being substitution of one person . in place of another whether as creditor or as possessor of rightful claim, so that party substituted succeeds to rights of the other in relation to debt or claim, and to its rights, remedies, or securities (citing Words and Phrases, vol. 7, p. 6722, "Subrogation").

---

*Corpus Juris-Cyc. References: Subrogation, 37Cyc, p. 363, n. 1; Taxation, 37Cyc, p. 1154, n. 5.

APPEAL from chancery court of Alcorn county.

HON. ALLEN COX, Chancellor.

Suit by Mrs. Willie Adams and others against Mrs. Della Taylor, in which defendant filed a cross-bill. From the decree, complainants appeal. Reversed and rendered.

*Conn & Conn,* for appellant.

As to the northwest quarter: In her answer to the original bill, appellee distinctly and positively disclaimed any rights in or ownership of this quarter. But she admits the payment of taxes thereon and asks for their refund. J. W. Taylor, husband and agent of appellee, as a witness in her behalf, repeats this disclaimer. He states that he knew all the time he was paying these taxes that his wife did not have any interest in this land, and that he himself had no interest therein, with this disclaimer of either interest or ownership in this quarter, and with full and complete knowledge of the fact from the very beginning. There is nothing to complicate or obscure the application of the law. The precise question is: Has a party, who officiously intermeddles with the property of another, in which he has no interest whatever, who knowingly has or permits such property to be assessed to him from year to year, and who knowingly pays the taxes thereon, accordingly have the right to call on the true owner for a refund of such taxes?

In *Staples* v. *Fox,* 45 Miss. 667, the elementary principles of the law of subrogation are discussed somewhat at length. Appellants were under obligation to pay these taxes, but it was not a "primary" obligation as that term was used in this case. It was their "sole" obligation. No other person on earth was under any sort of obligation, secondary or otherwise, to pay them. It was their absolute property and no one disputed their claim. If appellee had been secondarily liable, she could have

paid them and recovered from appellants. But there was no sort of liability upon her. She was a volunteer, pure and unadulterated. In *Good* v. *Golden*, 73 Miss. 91, after discussing the doctrine of subrogation, legal and conventional, and when it would apply, Justice WHIT-FIELD used the following language: "But he who discharges to the creditor such lien or incumbrance, a debt of the debtor, under circumstances making him a prime volunteer, is not entitled to subrogation. Mere payment, in and of itself, never entitles to subrogation, and appellants' case rests on mere payment alone."

This covers the case at bar. Appellee's claim to the right to be subrogated to the claim of the state for these taxes that she has paid rests upon "mere payment." She does not pretend to have had any interest to protect or that she was liable therefor in any manner whatever, or that she made payment under a mistake of fact, or by reason of any fraud or duress on the part of appellants. See *Staton* v. *Alcorn*, 51 Miss. 72; *Robinson* v. *Sullivan*, 102 Miss. 581.

Coming now to the matter of the refund of taxes paid on the southeast quarter of the block, we have a somewhat different state of facts, but, as we believe and contend, there is not enough difference to change the complexion of the case, or to change the rule of law applicable to the refund of taxes paid on the northwest quarter of this block. As to the southeast quarter appellee asserted claim thereto, and denied appellants' ownership thereof. Appellee denied "that at the time of the death of the said John Rufus Adams he was the owner and in possession of the southeast quarter of said Block 20, except a lot one hundred feet square in the southwest corner thereof; but avers that M. F. Baxter owned a lot twenty-five by one hundred feet in the southeast corner of said southeast quarter of said block, and A. S. Parham owned a lot about in the middle of said quarter facing south, and that as to the balance of said southeast quar-

ter defendant was at the time of the death of said John Rufus Adams, has ever since been and still is the owner of said land, exercising rights of ownership over it, renting parts of the same to various parties from time to time and collecting rent therefrom. At the time appellee had the assessment changed from "Estate of J. R. Adams" to herself, it had been standing on the records as Adams' land for almost a quarter of a century, and continuous possession under a deed, unassailed as to its efficacy and validity, was shown in appellants and those through whom they claim. Under these circumstances, was the payment of these taxes by appellee in good faith as upon property rightfully or reasonably believed to be hers?

Clearly if appellee could not demand this money back from the party to whom she paid it, she would not have the right to demand it back from these appellants; for whatever right appellee has against appellants must come through being subrogated to the right of the taxing authorities against them. She has no sort of claim against appellants, except through the doctrine of subrogation. They never asked appellee to pay these taxes; they did not trick or defraud her into paying them; and they neither promised her, either expressly or impliedly, to repay her if she should pay them.

We wish to refer rather briefly to one or two other authorities. After discussing "Volunteers" under the general head of "Subrogation," 25 R. C. L. 1324, in applying the doctrine the following is stated: "The general rule has also been applied, and subrogation denied, where one voluntarily paid taxes for which neither he nor his property was liable, and sought to be subrogated to the rights of the state against the property and its owner." See, also, *Iowa Homestead Co.* v. *Des Moines Navigation and R. R. Co.*, 21 Law Ed. 622.

*B. F. Worsham,* for appellee.

Will the appellants be in the least hurt by having to refund the taxes which they should have paid, and ought the appellants not be required to refund taxes which had been paid by defendant under the circumstances and facts as shown in this record? Can this court say that the defendant, because she lost land, part of which the appellants had no title whatever to, except squatter's rights, and these rights very doubtful and indefinite, must lose the actual money paid by her for taxes, and for which the appellants have gotten the direct benefit? The court below could not have said that the proof definitely, certainly and conclusively showed that the appellants had an absolute title to these lands, either by records or paper title, or by adverse possession; and his conclusions must of necessity have been based rather on the weakness of the claims of appellee. The questions discussed in appellants' brief are rather highly technical, and in our judgment do not fit the case at bar.

McGowen, J. The appellants Mrs. Willie Adams *et al.* filed their bill in the chancery court, seeking the cancellation, as a cloud on their title, of the claim of Mrs. Della Taylor, the defendant and cross-complainant in the court below, the appellee here, in and to the northwest, the northeast, less certain parts, and the southeast, less certain parts, quarters of block 20 of Graham Division to the city of Corinth; and the bill sought to have their title confirmed thereto as against the said defendant. The complainants asserted title through J. R. Adams, the husband of Mrs. Willie Adams. The other complainants were the children and grandchildren of J. R. Adams.

Mrs. Taylor filed her answer disclaiming any interest in the northwest quarter, but setting up claim, through her husband, to the other lands involved, and filed a cross-bill seeking to recover taxes paid on two quarters of this block. The court below quieted and confirmed

the title to all the lands in the complainants, but allowed the defendant and cross-complainant the sum of one hundred dollars, the taxes paid on the northwest quarter, in which she asserted no interest whatever, and another quarter, to which there was set up some feeble claim. From the decree the complainants Mrs. Willie Adams *et al.* appealed, assigning as error the action of the court allowing one hundred dollars taxes to Mrs. Della Taylor the cross-complainant in the court below.

In the opinion of the chancellor, we find the following statement with reference to the facts of the case:

"I am of the opinion, in this case, that the defendant shows absolutely no title, either by paper title or adverse possession, to any of the lands in controversy."

This record shows that in 1918 these lands were assessed to the estate of J. R. Adams, through whom the complainants assert title, and that the record was changed, by pencil mark, so as to assess the land to the Taylors, and that they, without the knowledge or consent of the complainants, paid the taxes thereon. The decree finds the amount of the taxes to be one hundred dollars. We are unable to ascertain from this record how the court arrived at these figures. This record does not show that Mrs. Taylor was under any obligation or duty to pay the taxes on these lands. There is no appeal from the decree of the court below adjudicating that she had absolutely no title. Mrs. Adams and the other complainants were in visible possession of the property. Mrs. Taylor never had any sort of possession; there was no request from Mrs. Adams to Mrs. Taylor that she pay her taxes; there was no legal duty upon Mrs. Taylor to pay the taxes. She was not forced in any way, so far as this record discloses, to pay the taxes. Just why she made these payments does not appear from this record. She was a mere volunteer. May she then recover sums paid by her voluntarily which were the debts of another, simply because the assessment made by the constituted authori-

ties from year to year was changed, either by the sheriff or some other party, and not corrected by her? We say not.

The court erred in allowing one hundred dollars on the cross-bill. There was no conventional subrogation, neither was there subrogation by implication. In the case of *Staples* v. *Fox*, 45 Miss. 667, this court announced this rule, to-wit:

"The general proposition is that before the right accrues there must be the discharge of legal obligation for another, who is under a primary obligation, for no man can make another his debtor without his consent. The principle, in its application, is very broad, so that it was difficult to prescribe its limits. Generally, the person who discharges the debt by payment must be under a legal obligation to do so."

Judge WHITFIELD, as the organ of the court in the case of *Good* v. *Golden*, 73 Miss. 91, 19 So. 100, 55 Am. St. Rep. 486, after discussing the principles of legal and conventional subrogation, used the following significant language:

"But he who discharges to the creditor . . . such lien or incumbrance, a debt of the debtor, . . . is not entitled to subrogation. Mere payment, in and of itself, never entitles to subrogation, and appellant's case rests on mere payment alone."

Of recent years the rule has been correctly stated in the case of *Robinson* v. *Sullivan*, 102 Miss. 581, 59 So. 846, wherein Chief Justice SMITH, as the organ of the court, said:

"In order to reach a correct solution of this controversy, it is not necessary for us to review the various decisions of this court cited by counsel, but simply to keep in view certain elementary principles of the law of subrogation, with which these decisions are in full accord. 'Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of

any rightful claim, so that·he who is substituted suc-
ceeds to the rights of the other in relation to the debt or
claim, and to its rights, remedies, or securities.' Words
and Phrases, vol. 7, page 6722. 'The doctrine is one of
equity and benevolence, and, like contribution and other
similar equitable rights, was adopted from the civil law,
and its basis is the doing of complete, essential, and per-
fect justice between all the parties, without regard to
form, and its object is the prevention of injustice. The
right does not necessarily rest on contract or privity, but
upon principles of natural equity, and does not depend
upon the act of the creditor, but may be independent of
him, and also of the debtor.' 37 Cyc. 363. As was said
by Chief Justice SHARKEY in *Blackwell* v. *Davis*, 2 How.
812, the doctrine of subrogation is 'the offspring of nat-
ural justice, and courts should rather incline to extend
than to restrict the operation of a principle so elevated
and pure.' It applies, in general, 'wherever any person,
other than a mere volunteer, pays a debt or demand which .
in equity or in good conscience should have been satis-
fied by another, or where a liability of one person is dis-
charged out of the fund belonging to another, and where
one person is compelled for his own protection, or that
of some interest which he represents, to pay a debt for
which another is primarily liable, or wherever a denial of
the right would be contrary to equity and good con-
science.' 27 Am. & Eng. Ency. of Law (2 Ed.), 203.
And 'whenever a party has such an interest in property
as makes it incumbent on him to get in an outstanding
claim or equity for its protection, good conscience dic-
tates that he shall have all the rights which the holder of
the equity had.' *Staples* v. *Fox*, 45 Miss. 667."

Mrs. Taylor, in the payment of these taxes, was a vol-
unteer, and, to use the language of the street, seems to
have "butted in," so far as the title to the lands involved
in this controversy and her payment of the taxes thereon
are concerned. See 25 R. C. L. 1324; also, *Iowa Home-*

stead Co. v. Des Moines Nav. & R. R. Co., an opinion of the supreme court of the United States, reported in 17 Wall. (U. S.) 153, 21 L. Ed. 622, wherein this precise question was discussed and settled.

The cross-bill will be dismissed, and a decree entered here in favor of the appellant.

*Reversed, and decree for appellant dismissing cross-bill.*