[S. F. No. 14820. In Bank.—January 30, 1934.]

LEONTINE B. McMILLAN, Respondent, v. R. J. O'BRIEN, Appellant.

Livingston & Livingston for Appellant.

Keyes & Erskine and J. Benton Tully for Respondent.

CURTIS, J.—Action to quiet title. The suit was instituted by plaintiff to quiet title to a narrow strip of real property located on the north side of Geary Street between Kearny Street and Grant Avenue in San Francisco, having a frontage of 9¼ inches on Geary Street and a depth of 122 feet 6 inches. Defendant's answer contained the usual formal denials, and in addition contained a second count in the alternative which is the real basis of the controversy of the parties. This count alleges that defendant and defendant's predecessors in interest have paid taxes which were duly assessed to them by the county assessor upon said strip of real property for the fiscal years commencing 1907–1908 up to and including the fiscal year of 1928–1929, and prays that if it be determined that plaintiff is the true owner of the property that defendant have judgment against the plaintiff in the sum of $1232.35, the total amount of taxes erroneously paid by defendant and his predecessors in interest, together with interest from the date of the respective payments of said taxes to the date of the entry of said judgment, and that in default of the payment of said amount, the defendant's lien upon said property for the payment of said taxes and interest be foreclosed. The judgment of the trial court was in favor of the plaintiff, and a decree was made and entered quieting plaintiff's title free and clear of all encumbrances. It was expressly decreed that defendant had not any right, title, claim or interest or estate whatever in said property, and was forever barred from asserting any claim thereto.

The facts of the case which were presented upon a written stipulation entered into by both parties are simple. Plaintiff McMillan and defendant O'Brien are the owners of two adjoining lots having a frontage on Geary Street. Plaintiff

owns the east lot and defendant owns the west lot. The ownership of the 9¼-inch strip involved herein depends upon the location of the boundary line between the two lots. In 1903 W. W. Young, predecessor in interest of the defendant O'Brien, brought an action to quiet title to this disputed strip and to determine the boundary line between the two lots against T. Z. Blakeman, the owner of the east lot, and predecessor in interest of the plaintiff McMillan. In 1908, by a decision of the Supreme Court of this state, reported in 153 Cal. 477 [95 Pac. 888], it was finally determined that the disputed strip belonged to T. Z. Blakeman. This decision was based upon the ground that although the deed to T. Z. Blakeman, which described his lot by metes and bounds, did not include said disputed strip, nevertheless there had been an oral agreement between the owners of said lots locating said boundary line, and by said agreement the strip of land became included in the description of the property owned by Blakeman. Thereafter the lot belonging to W. W. Young passed by devise or descent to Ella Young, Edith Young, Francis Churchill Williams and Francis Churchill Williams, Jr., then to Edith Wakefield Huntington by grant deed for a consideration, and then to defendant O'Brien by grant deed for a good and valuable consideration. The lot of T. Z. Blakeman passed by descent or devise to plaintiff McMillan. The question of the ownership of the property having been definitely decided in the case of *Young* v. *Blakeman*, 153 Cal. 477 [95 Pac. 888], as set out in said stipulation, there can be no doubt that the plaintiff McMillan, as the successor in interest of T. Z. Blakeman, is the legal owner of said disputed strip of land and as such owner is entitled to have her title quieted. Despite the settlement of the boundary dispute in Blakeman's favor, it is admitted by stipulation that during the period of time commencing in 1907, prior to the final determination of the controversy regarding ownership, down to and including the year 1929, the taxes upon said property were paid by the successors in interest of Young. It is expressly stipulated that said property appeared upon the records of the assessor of the city and county of San Francisco, and of the tax collector of the city and county of San Francisco, as follows: During the fiscal years commencing 1907–1908 and ending 1921–1922, said property appeared on said records as be-

longing to Ella F. Young, Edith Young, Francis Churchill Williams and Francis Churchill Williams, Jr., and an amount aggregating $662.09 was paid by them in taxes; during the fiscal years commencing 1922–1923 and ending 1925–1926 said property appeared on the records as belonging to Edith Wakefield, and an amount aggregating $329.16 was paid by her in taxes; and during the fiscal years commencing 1926–1927 and ending 1928–1929 said property appeared on said records as belonging to defendant O'Brien and he paid an amount aggregating $241.12 as taxes. None of the amounts paid as taxes have ever been repaid to the parties making such payments. It is also stipulated that at all of the said times said defendant and his predecessors in interest believed that said property belonged to them at the respective times above set forth and on account of said belief paid the taxes levied by the city and county of San Francisco on said property. It is also expressly stipulated that said taxes so paid by defendant and his predecessors in interest were paid without the request, consent or knowledge of plaintiff, or her predecessor in interest, T. Z. Blakeman, and that neither of them had notice of the payment of said taxes.

No explanation is given of the reason why the property continued to be assessed for some twelve years erroneously to the successors of W. W. Young. However, it is apparent from the decision in *Young* v. *Blakeman, supra,* that as the agreed boundary line fell outside the property described in the deed to Blakeman's east lot, that it fell within the property described in the deed to Young's west lot, and it may be surmised that subsequent to the decision the assessment was not changed by the successors of Young, and therefore this 9¼-inch strip continued to be assessed as being contained in the description of the property embraced in Young's deed to his lot. (The diagram of the property herein involved as set out in the decision of *Young* v. *Blakeman, supra,* shows the reasonableness of this explanation.) Whatever may have been the reason for such erroneous assessment over this period of years, it is apparent that the ownership of this strip was in fact a matter of record and that any inquiry into its ownership would have immediately shown that plaintiff McMillan or her predecessor in interest, Blakeman, was the true owner. The question therefore is

presented: Is a person who pays taxes on property which in fact belongs to another—and which appears of record as belonging to that other—in the honest but mistaken belief that the land belongs to him, entitled to any relief or reimbursement upon discovery of the true ownership as against the owner of the property who has not paid any taxes upon the property?

It is the general rule that there can be no recovery for a voluntary payment of the debt of a third party without request and with no promise of repayment by the party whose debt is paid, and it was apparently upon the theory that the defendant was a mere volunteer that the trial court refused him any relief.

What is a volunteer? Appellant argues that the term "volunteer" implies something more than a person who does an act otherwise than under compulsion and insists that it contains the implication of an officious intermeddling in the affairs of another. In support of his position, he cites a number of cases from other jurisdictions which hold that one who pays the taxes on the property of another, either by mistake, or under the mistaken belief that he has good title to the property, is entitled to reimbursement upon the theory of equitable subrogation. (*Baranowski* v. *Wetzel*, 174 App. Div. 507 [161 N. Y. Supp. 153]; *Ingersoll* v. *Jeffords*, 55 Miss. 37; *Title Guarantee & Trust Co.* v. *Haven*, 196 N. Y. 487 [89 N. E. 1082, 17 Ann. Cas. 1131, 25 L. R. A. (N. S.) 1308; Id., 214 N. Y. 468 [108 N. E. 819]; *Wilcox's Estate*, 118 N. Y. Supp. 254; *Wiswell* v. *Beck*, 92 Wash. 208 [158 Pac. 976]; *Childs* v. *Smith*, 51 Wash. 457 [99 Pac. 304, 130 Am. St. Rep. 1107].) And appellant claims that the subrogation doctrine therein upheld has been applied in California in the case of *Fresno Investment Co.* v. *Brandon*, 79 Cal. App. 387 [249 Pac. 548], and upon the strength of these authorities he should be granted equitable relief.

It may be noted at the outset that the rule as to remedy in cases in which parties have paid taxes under a supposition that they were the owners, which afterwards proved to be erroneous, is different in different states. (Cooley, Taxation, 4th ed., vol. 3, p. 2530, sec. 1270; see note 61 A. L. R. 592.) Respondent has therefore, in turn, cited a number of cases of other jurisdictions which support her theory that appel-

lant is a volunteer and is not entitled to subrogation. (*Iowa Homestead Co.* v. *Valley Railroad,* 84 U. S. (17 Wall.) 153 [21 L. Ed. 622]; *Bryant* v. *Nelson-Frey Co.,* 94 Minn. 305 [102 N. W. 859]; *Adams* v. *Taylor,* 149 Miss. 750 [115 So. 878]; *Jacobs* v. *Webster,* 199 Mo. App. 604 [205 S. W. 530]; *Bateson* v. *Phelps Estate,* 145 Mich. 605 [108 N. W. 1079].) And she, in turn, claims that in a number of cases California has repudiated the doctrine of equitable subrogation under similar circumstances and has aligned itself with those states adhering to the rule that one paying taxes under a mistaken belief in his ownership cannot thereafter seek and secure reimbursement from the true owner.

We have examined all of the cases cited, both from other jurisdictions and those of our state, and are of the opinion that respondent is correct in her contention that California holds to the rule that one paying taxes under a mistaken belief in his own ownership is a volunteer, and that, therefore, the judgment of the trial court quieting title in plaintiff, and decreeing that defendant had no right, title, claim, interest or estate whatever, in said property is correct.

It is well recognized that one who pays the debt of another in order to protect an interest of his own is not a volunteer and is, therefore, entitled to subrogation. *Fresno Investment Co.* v. *Brandon, supra,* cited by appellant, is merely an example of this situation. In that case plaintiff paid taxes which had been levied upon defendant's personal property, but which had been assessed against the plaintiff. By section 3717 of the Political Code, "Every tax due upon personal property is a lien upon the real property of the owner thereof," and the assessment, therefore, became an apparent lien upon plaintiff's real property. In that case plaintiff had an interest to protect and when he paid the taxes to prevent the fixing of a lien upon his real property, he was entitled to recover the taxes paid under the equitable doctrine of subrogation. The taxes in that case were paid for the purpose of protecting his own rights and interests, which is one of the usual grounds for permitting subrogation. The decision in that case, based upon the ground that plaintiff had an interest to protect, cannot be said to support the proposition that one who has no interest to protect and who pays the taxes of another is

entitled to equitable subrogation, and appellant's claim that by this decision this state has aligned itself with the authorities cited by him is not tenable.

Respondent cites the cases of *Stanley* v. *Westover,* 93 Cal. App. 97 [269 Pac. 468] , *Vanderbilt* v. *All Persons, etc.,* 163 Cal. 507 [126 Pac. 158], and *Huddleston* v. *Washington,* 136 Cal. 514 [69 Pac. 146], as holding that the voluntary payment of taxes upon property of another did not entitle the payer of such taxes to reimbursement. Other California cases cited by respondent were decided upon other theories and are distinguishable from the instant case. The facts in *Vanderbilt* v. *All Persons, etc., supra,* are very similar to those of the instant case in that the taxes were paid by an adjoining land owner upon a mistaken assessment upon a strip of land actually occupied by a portion of plaintiff's building. However, the decision of the court falls short of sustaining respondent's position, for it merely holds that "such payment would not defeat Mrs. Vanderbilt's right to have her title to this strip of land quieted". The question of whether or not defendant would be entitled to reimbursement for the payment of taxes was not discussed nor decided. The case of *Huddleston* v. *Washington, supra,* involved a clear case of an officious intermeddling in the affairs of another in that the plaintiff in that case who was the remainderman, induced the assessor to assess the entire property, including defendant's life estate, to her, and thereafter paid the taxes thereon, later seeking reimbursement from the life tenant. The case, therefore, is quite different from the instant case, in which it is expressly stipulated that the taxes were paid under an honest mistake. The case of *Stanley* v. *Westover, supra,* involves the question of a mistake of ownership and, in our opinion, controls the decision of the instant case. Plaintiff Stanley in that case brought an equitable action to set aside a McEnerney decree in favor of the defendant Westover, and to quiet his title. Westover had acquired his title to the property from the Sonoma Lumber Company, which had purchased it at an execution sale. The defendant Westover and his predecessors had paid taxes on the property over a period of years. The court held that the defendant was not entitled to any reimbursement for the taxes so paid and quieted the title in plaintiff free of any claim for such taxes. The court in so holding cited and

relied upon the case of *Homestead Co.* v. *Valley Railroad,* 84 U. S. (17 Wall.) 153 [21 L. Ed. 622], in which the United States Supreme Court held that taxes paid by an unsuccessful litigant during litigation over the title to property could not be recovered from the successful litigant. It is true that in both the cases of *Stanley* v. *Westover, supra,* and *Homestead Co.* v. *Valley Railroad, supra,* the mistake which motivated the paying of the taxes was a belief in the validity of a questioned title, whereas in the instant case, the mistake which motivated the paying of the taxes was a belief in the validity of a title to property which without question belonged to another. In the other cases it required an adjudication by a court to determine the lack of ownership in those paying the taxes, whereas in the instant case a mere examination of the records would have disclosed the fact that those paying taxes were not the true owners. In both instances, the mistake on the part of those paying the taxes consisted of a mistaken belief in their ownership of the property. We, therefore, reach the conclusion that since in fact the defendant herein and his predecessors in interest did not in fact have any rights or interests in the property on which they, through a mistaken belief in its ownership, paid taxes, they are not entitled to equitable subrogation.

The rule laid down in the case of *Holland* v. *Hotchkiss,* 162 Cal. 366 [123 Pac. 258, L. R. A. 1915C, 492], that an owner coming into equity to remove a cloud upon his title should be refused relief except upon condition that he first repay to the tax purchaser or his grantees or assignees the taxes with legal interest from the time of such payment, which has been embodied in section 3898 of the Political Code, was relied upon by appellant in the case of *Stanley* v. *Westover, supra,* and there held to have no application. We are likewise of the opinion that the cases cited by appellant which deny relief to a plaintiff who seeks to quiet title unless he pays off a mortgage admittedly barred by the statute of limitations have no application to the situation here. In those cases obviously no question of volunteer payments could be involved, for the loan for which the mortgage was given as security was made at the request and with the consent of the mortgagor.

We have read the record with particular reference to the alleged stipulation of the attorney for respondent that irrespective of whether appellant was entitled to reimbursement for payments made by his predecessors in interest, he was entitled to be reimbursed for the amount actually paid by him. We are not convinced that this conversation with the court, in which the attorney stated that there was no doubt that the taxes had been paid by defendant O'Brien, was intended by the attorney as a stipulation that appellant was entitled to reimbursement for said payment, nor that it was considered such a stipulation by the trial judge.

The judgment is affirmed.

Thompson, J., Langdon, J., Preston, J., Seawell, J., Waste, C. J., and Spence, J., *pro tem.*, concurred.

Rehearing denied.