In the Matter of the Estate of KATE GLEASON, Deceased.

Surrogate's Court  Monroe County, December 20, 1934.

*Harris, Beach, Folger, Bacon & Keating* [*L. B. Bacon* of counsel], for the executor.

*C. W. McKay*, for the claimant.

*R. H. Rogers*, for the legatee.

*C. F. Bown*, in person.

FEELY, S.   1. Allowance to C. F. Bown.

The legal services rendered by Mr. C. F. Bown in the course of the liquidation of this estate, and in setting up the large residual trust, as more particularly set forth in the records and also in his affidavit filed herein November 10, 1934, are found to have been of substantial benefit to this court as well as to this estate and funds; and are of the reasonable value of $3,000. The executors are directed to pay him that sum out of corpus as an administration expense.

2. Claim of Mrs. Nellie M. Atkin for refund of part of sewer assessment.

Out of this claimant's seventeen and seven-tenths acre parcel of land in the town of Pittsford, this testatrix purchased in February, 1927, five acres with a frontage of ninety-five feet on East avenue. This reduction in area apparently came to the attention of the town assessors, who reduced claimant's acreage on the tax roll to thirteen acres, but it seems to have escaped the attention of the sewer commissioners. The method of billing the tax is illustrated by the bill of 1930, which contains these items: " Page, 103; Tract, Res.; Description, lot 9, Town 12, Range 5; No. Acres, 13; Assessed Valuation, 16000; Fire 41.31; Hydrant 9.06; Sewer Tax 416.55; State, County and Town Tax, 164.63; Total Tax, $631.55, Collector's Fees $6.32; Total Amount paid $637.87."

In this form, after the deed of conveyance, the claimant grantor's assessment and taxation was continued, the only change being in the entry of thirteen acres for eighteen; otherwise the items of taxes were assessed on the same basis of frontage and the area of the whole tract owned by the taxpayer. The claimant grantor paid these bills as they came along, some after the death of her grantee, the testatrix. The grantor claimant now makes claim on the estate of the grantee for five-eighteenths of the six sewer taxes paid by the grantor since the deed of conveyance, to wit, for the years 1928 to 1933, both included, totaling $571.96, together with interest, as set out in the stipulation of the facts on which this claim is submitted. The claim is based on the theory that by these gross payments, made in good faith and by mistake, the burden of this sewer assessment item, at least to the extent of five-eighteenths thereof, has been unfairly lightened on the estate of the grantee. It is true the grantee's five acres were not separately assessed; but it is very probable the amount of sewer tax assessment would have been mathematically apportioned by the sewer commissioners had the deed of the five acres been brought to their attention. In cases where the division of taxable property has not come to the attention of the tax authorities, the Tax Law (§ 297) provides for an apportionment, which is followed by refund and reassessment of the omitted parcel for what it should have rightly borne from the outset. Section 297 provides that where the " premises of one person have been wrongfully assessed and taxed in with the premises of another " the County Court may apportion the tax on notice to the assessors. This method of procedure has the advantage of correcting the roll, and forestalling the continuance of the mistake; whereas any refund ordered by this court on the theory of equity or quasi-contract would not be binding on the taxing body, nor create a lien, nor in and of itself effect a correction of the public roll. In this case, however, all the taxes have been fully paid by the claimant.

The authorities are not harmonious (See *McMillan* v. *O'Brien*, 219 Cal. 775; 91 A. L. R. 383–389), nor has any case in point been found, but in view of the " equities " that the situation presents in the claimant's favor, and the probability of a reassessment, it would seem to be within the equity powers of this court to effectuate what is virtually a refund by allowing this claim and directing the executors to pay the claimant $571.96, without interest. As this matter was not brought to the attention of the testatrix, nor was it likely to be until discovery, the testatrix cannot be said to have been in default as much as was the claimant, with the tax bills repeatedly in her hands and paid them, and moreover this claim is an unliqui-

dated one, as well as an unknown and unexpected one. Let provision be made accordingly in the decree to be entered herein.

3. Average interim interest or income on the trust for Margaret Dobmaier.

This trust was created by the sixth paragraph of the will in these words: " I give and bequeath to my Executor hereinafter named, in trust, the sum of ten thousand dollars ($10,000.00) to hold, invest and reinvest the same and to pay the net income therefrom quarterly or oftener, to Margaret Dobmaier, formerly my housekeeper, or in its discretion to apply the said income to her use during her life; and upon her death the said sum of ten thousand dollars shall fall into and become part of the residue of my estate." The intention of the testatrix to do something more here than make a mere gift crops out in several features of this trust; it is for the life of an old housekeeper, to pay income (eight dollars a week at four per cent) over to her, or if she become unable to do for herself, then to apply it to her use, even oftener than quarterly, if need be. Altogether these directions indicate testatrix meant to support or pension this old " retainer " and friend; and for this reason this trust falls in the class that is deemed by the courts to have planned for the care of the beneficiary from the outset, from the death of the testatrix. As the intention of testatrix is understood to include the income from death, it is deemed to be the average earned during the period of liquidation. (*Matter of Brown,* 115 Misc. 710.) Here the interest is an inherent part of the gift itself, and not a charge superadded by virtue of some procedural statute. " The delay was not occasioned by any neglect of the executor. * * * The account shows that the legacies were paid as soon as the executor could properly do so." (*Matter of Brown, supra.*)

4. Claim for a year's interest on a general legacy of money, paid nineteen months after letters testamentary.

Testatrix disposed of an estate of about $1,250,000 by some sixty odd legacies, the greatest number of which were of sums of money (mostly $1,000 each) to legatees designated in the will as " my friends," none of whom were either relatives nor dependents. Under paragraph seventh in subdivision (b), which begins with the words " To my friends," there is a legacy of $5,000 to an infant named " Nathaniel H. Rogers, son of Rochester H. Rogers of Rochester, N. Y."

The assets of testatrix at the time she made her will, April 6, 1932, and at the time of her death, January 9, 1933, were about the same. For present purposes, they can be classified and roughly estimated by saying that one-twelfth thereof was in real estate,

eight-twelfths in the closely-held stock of the family corporation that is engaged in making heavy machine tools, two-twelfths in general securities, and one-twelfth in mortgages. The liquidation of this closely-held stock was necessary; and, obviously, this presented unusual difficulties, aside from the difficulty involved in construing the residuary legacy of the largest part of the estate. Although letters issued in January, 1933, it was not until the middle of July, 1934, that there was enough cash realized by the disposal of the closely-held stock to enable the executors to pay off the general legacies in full. This was immediately done on receipt of the cash; and in the case of this infant $4,900 was paid his general guardian on July 19, 1934. A balance of $100 of principal was left unpaid, so as to bring up the question of interest, which the guardian desired to have the court pass upon, lest he might be thought not to have discharged his full duty to his ward. Instead of considering this legacy from the general point of view only, attention should be given first to the probability that testatrix must have known that there would have to be a conversion into cash of the slow assets and also of the large block of closely-held stock before a payment in full of all these friendly legacies could be made. While this aspect does not make this $5,000 legacy a specific one, whose accessories would follow its principal from the outset, still it reflects a circumstantial light on the deferred nature of the intended gift. It was to be a gift of just $5,000 if and when it could be made, considering the financial set-up on which she predicated her whole testamentary scheme eight months before her death. From the general point of view, this $5,000 legacy is clearly one of the general type that is deemed to have been meant to be a gift of just so much money out of the personal assets only.

Contrasted with the Dobmaier legacy, above mentioned, this general legacy lacks every earmark of any intention in the mind of the testatrix to make the income or produce of this unsegregated fund a part of the subject-matter or benefit that she meant to be given this youthful friend. Concededly, therefore, the executor is entitled to the opportunity given by statute to bring the assets around into shape to distribute at the end of seven months after letters. At the end of that time, under the general rule, interest would begin to run, if at all (*Matter of Donahue*, 149 Misc. 558); but in the circumstances of this case it would not be as an intended or natural part of the original gift, but only as a charge superadded thereto, under the statute, rather than by its express terms. The statute is silent as to interest; but interest thereafter has been allowed on the indefinite basis of inferences the courts have drawn from the consequences of the enactment.

The first object of the original act was to free an executor from the rigor of the common-law rule that compelled him to distribute as of the date of death, and pay interest accordingly, regardless of whether any interest had, or could have been earned, and without regard to the date when he accepted the task. Instead, the statutes gave him a reasonable time, commonly a year, later on seven months, to get in the assets and turn them into condition to distribute. The fixing of this period led to the general legal inference that at the end of the period the executor would be presumably able to pay. (*Wheeler* v. *Ruthven*, 74 N. Y. 428.) Being a presumption, it was rebuttable to a limited extent. It applied only in the absence of a direction in the will, or other decisive indication which, interpreted in the light of the surrounding circumstances, shows a different intention on the part of the testator. (Id.)

The present statute (Surr. Ct. Act, § 258), more so than the former (Code Civ. Proc. § 2726), vests accordingly some discretion in the court, notwithstanding the expiration of the statutory period, for the present statute reads that, even in a compulsory settlement proceeding, the court " may, from time to time, compel " a judicial settlement, when the seven months have expired.

In the peculiar circumstances of this case, it seems that such discretion should be exercised to effectuate what apparently was the intention of this testatrix — situated financially as she was — that these general money legacies to friends should be paid at face value when the executor, in the exercise of due diligence, should have become able to do so. Had there been any demand for this legacy at the end of the seventh month, or had there been any claim that the executor was to blame for the delay thereafter, then there might be some ground for asking the court to make him pay moratory interest as damages, just as if he had breached a contract, or had unlawfully detained money past due. In that event, he would be charged with interest at the legal rate (*Wheeler* v. *Ruthven*, *supra*), regardless of whether the assets were barren or productive. (Id.)

The harshness of that rule rests in part on the notion that the executor is to be punished for remissness or misconduct while acting under letters of power issued by public authority. Although not strictly a " penalty," such interest is based on the notion of default. (See *Preston Co.* v. *Funkhouser*, 261 N. Y. 140.) None of those factors appearing in this case, the legacy in question is held not to carry interest.

Upon notice, or voluntary appearance, submit for entry a decree in accord with this decision.