**Amalia Garcia BARRERA, Appellant,**

v.

**Jose Maria BARRERA, Appellee.**

No. 13051.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 24, 1956.

Ronald Smallwood, Alonso S. Perales, San Antonio, for appellant.

Hall & Hall, Laredo, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted in the District Court of Webb County by Jose Maria Barrera against his former wife, Amalia Garcia Barrera, seeking to recover the sum of $1,000 for waste alleged to have been committed by defendant to property known as 1604 Sanders Avenue in the City of Laredo, Webb County, Texas, and for the further sum of $317.14, for defendant's failure to pay taxes assessed against this property by the City of Laredo, the County of Webb, the State of Texas, and the Laredo Independent School District.

The trial was before the court without the intervention of a jury and resulted in judgment for plaintiff in the sum of $642.-50, from which judgment Amalia Garcia Barrera has prosecuted this appeal.

Appellee and appellant were divorced on March 27, 1951, and the decree approved a property settlement agreement of the parties which contained the following paragraph:

"2. The said Amalia Garcia Barrera, in addition to the amount of money set out in Paragraph 1, above, shall be entitled to the use and occupancy of the property located at 1604 Sanders

Avenue, Laredo, Texas, it hereby being understood, however, that the garage located on said premises shall remain in the possession of and be used by Jose Maria Barrera."

The evidence shows that the house was in a very bad state of repair. Appellee testified that on March 27, 1951, the house here involved was in good repair and had a new roof, as the old one had been leaking. As to the condition of the premises at the time of the trial he testified as follows:

"A. It is very bad, part of the porch there is down but the other I just repaired it. The roof is coming this way and the sides are drawn, the windows and everything.

"Q. You mean by that that the roof is falling in and the walls are falling down? A. Yes, and the garage is no good."

He further testified that the cost to place the house in as good condition as it was in March, 1951, would be from $700 to $800.

■ Appellant testified, among other things, that the house was greatly damaged by a flood. This, of course, would be damage for which the life tenant would not be responsible. 58 Am.Jur. 470, Waste, § 28. She further testified that when she undertook to repair the house appellee told her not to do so, not to spend any of her money on the house because it belonged to him. Appellee testified to the same thing. The effect of this statement was to relieve appellant from the duty of making repairs. The theory of waste is to protect the remainderman in his reversionary interest. The right to have the life tenant make reasonable and necessary repairs is for the benefit of the remainderman and he can waive such right if he so desires. Waste may be authorized by the remainderman. 56 Am.Jur. 455, Waste, § 9. Appellee could not order appellant not to make repairs

on his house and then turn around and sue her for failure to do so.

■ The only allegation found in appellee's petition with reference to taxes is that they were not paid. Failure of the life tenant to pay taxes is not of itself waste. Camden Trust Co. v. Handle, 132 N.J.Eq. 97, 26 A.2d 865, 154 A.L.R. 602. Appellee, during the trial, asked leave of the court to file a trial amendment changing his plea from one that the taxes had not been paid, to one that appellee had paid such taxes. Attorney for appellee was told to dictate his trial amendment to the court reporter, which he did, as follows:

"Mr. Hall, Sr. That the plaintiff has paid these taxes on this property before same became due for the purpose of avoiding a lien being fixed thereon and that as the remainderman he was not obliged to do so but that as the taxes were the charge of the life tenant and that since she did not pay them he paid them for the purpose of avoiding delinquency, and penalties and interest accrued as a result and that he is entitled to credit and judgment against the life tenant for these taxes."

This so-called trial amendment apparently was never reduced to writing and does not appear in the transcript, where pleadings should be found.

■ Aside from this, it appears that appellee rendered all of the property at 1604 Sanders Avenue along with his property, in his own name, and paid these taxes before they were past due, without first making a demand upon appellant, and without asking the taxing authorities to separate the tax on that part of the premises which he occupied from that occupied by appellant. It seems that it is now too late to have these taxes separated by the taxing authorities. The situation in which appellee finds himself was brought about by his voluntary act in paying the taxes before they were due and without asking the tax-

ing authorities to separate such taxes. What was said in Huddleston v. Washington, 136 Cal. 514, 69 P. 146, 147, is applicable here:

"The remaining question, when reduced to its simplest form, is: Can A., a remainder-man, voluntarily cause the property of B., the owner of the life estate, to be assessed to him (A.), pay the taxes thereon without the authority of B. before they become delinquent, and have his action at law to recover the amount from B. as for money paid to his use and benefit? In answering the question, it may be admitted that it is the duty of the life tenant to pay the taxes (Civ.Code, § 840); and if he fails, and they become delinquent, and the property is about to be sold, thus endangering the remainder-man's estate, the latter may invoke the aid of a court of equity to have the rents applied to the protection of the property. 2 Desty, Tax'n, 938, and cases cited. Such is not the case here. The tenant in remainder voluntarily chose to have the property assessed to her, against the wish of the tenant for life and without her authority; and before the taxes became delinquent she paid them. There was neither compulsion nor duress here, as the law regards compulsion, and if it can be said, as the court found, that she paid the taxes to prevent the penalty from attaching, it was the result of her own unwarranted and officious interference with the property of another. We do not think the fact that defendant knew the property was assessed to plaintiff, and knew she was about to pay the taxes and interposed no objection, in any way affects the question. Nor does the fact that plaintiff demanded of defendant to pay half of the assessment give plaintiff any additional right. Defendant may have refused or neglected to pay as demanded, because, as the court found, the two

interests assessed—the north and south halves of the lot—were of unequal value. The payment of the taxes, if compulsory at all, was not made through the compulsion of defendant, but solely to avoid a penalty for nonpayment to be enforced by the officers charged with collecting the tax. So far as defendant was concerned, she in no wise was party in enforcing payment, and 'a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress, imposed upon it by the party to whom the money is paid.' Mayor, etc., [of City of Baltimore] v. Lefferman, 4 Gill, Md., 425, 45 Am.Dec. 145, cited in Brumagim v. Tillinghast, 18 Cal. 265, 79 Am.Dec. 176. There was no more compulsion put upon plaintiff the day before the tax became delinquent than if she had paid the taxes the next day after they became due and payable. There is in the case nothing to show an agreement by defendant with plaintiff to pay any portion of this tax, and 'no man can be a debtor for money paid, unless it was at his request' (Curtis v. Parks, 55 Cal. 106); and it must be proved, either directly or presumptively, that the defendant requested the plaintiff to lay out the money for his use (Moulton v. Loux, 52 Cal. 81). It was stated in McGee v. City of San Jose, 68 Cal. 91, 8 P. 641, to be 'a well-settled principle of law that one person cannot, without authority, pay the debt of another, and charge the amount so paid against the party for whose benefit the payment was made.'

"We think plaintiff, by voluntarily causing the property to be assessed to her, became primarily liable for the taxes, and, when she paid them without the request of defendant, it was a voluntary payment, for which defendant is not liable to plaintiff. Some of the material findings are unsupported by

the evidence, and the decision is against law. We recommend that the judgment and order be reversed."

The judgment of the trial court is reversed and judgment here rendered that appellee take nothing.